BENJAMIN MAITLAND vs. THE CITIZENS' NATIONAL BANK OF BALTIMORE.

*Evidence — Corroboration of witness by Hearsay proof of his previous Unsworn statements—Liability of the maker of an Accommodation note given as collateral security for a pre-existing indebtedness. How far the holder of such note can be affected by the Fraudulent transfer of it to him for a purpose not contemplated by the maker—Upon whom lies the Burden of proof to establish such Fraud — The measure of the right of Recovery on such note, and upon whom the Burden of proof lies to show the amount due thereon.*

The firm of P. & M. kept an account with a Bank in Baltimore, and received from it discounts of drafts or bills to a considerable amount. While the account was still running, the Bank instructed G. its cashier to call upon M., a member of the firm, for collateral security. G. did so on the 10th of January 1872, and suggested the giving of the note of M's. father as such security. M., the father, upon the request of his son gave him his promissory note in favor of the firm for $10,000 which was indorsed by the firm and delivered to the Bank. P. & M. failed on the 15th of January, 1872, owing the Bank on account of drafts discounted on and after the 10th of January, $5681, and on account of drafts discounted prior to said 10th of January, $15,000. In an action brought by the Bank against M. senr. on the note for $10,000, one of the questions raised was whether or not this note was given as collateral security for the payment only of the drafts discounted, on and after the said 10th of January, 1872, or was also intended to cover drafts discounted prior to that day: G. the cashier, testified that the demand which he made was for collateral security, for all drafts *then held* by the Bank, as well as for all others that might *thereafter* be discounted for the firm. On the other hand, it was testified on the part of the defendant, that security was only required, and therefore only given for drafts *thereafter* to be discounted, including the drafts discounted on the 10th of January 1872. The plaintiff then, in order to corroborate the testimony of G. offered to prove by its president and two of its directors, that G. a few

Maitland *vs.* The Citizens Natl. Bank of Balto.

days after the 11th day of January 1872, and before the failure of P. & M. stated to the Board of directors, that he had obtained from P. & M. the defendant's note for $10,000, "which was to be held by the Bank as collateral security for all drafts which it was carrying; that is, which it had discounted at the date of said note, as well as for all drafts which should be discounted by it for said house subsequently to the date of said note." HELD:

That this evidence was inadmissible, on the ground that there was no real or substantial similarity in facts and circumstances between the unsworn, and the sworn statements of G.

An indorsee of a negotiable promissory note made for the accommodation of the indorser, taking the note in good faith as collateral security for an antecedent debt, and without other consideration, is entitled to the position of holder of such paper for value, and therefore not affected by the defence of the want of consideration to the maker.

It is no defence that the note sued on was known to the plaintiff to be an accommodation note between the maker and the payees, provided the plaintiff took the note for value *bona fide*, before it was due.

Where the payee of the note received it from the maker, with authority to use it as collateral security for a specified indebtedness, and the payee exceeds his authority, and transfers it to the indorsee as collateral security for a larger indebtedness, the latter is not to bear the consequence of this excess of authority, unless it be shown that it was taken with knowledge of the fact, that the payee had so exceeded his authority.

But if the fact of such knowledge be established, the indorsee would be affected by it, and could have no right to recover, except for amounts due on the indebtedness for which the note was authorized to be pledged.

Where the maker of the note in an action against him brought by the indorsee, seeks to avail himself of the defence of such excess of authority, it is for him to prove it.

In such action in order to make the defence effectual, on the ground of the want of authority in the payee to pledge the note for past discounts, there should be such proof as would justify the conclusion, that the indorsee had actual knowledge of the limited purpose for which the note was made, and consequently of the excess of authority by the payee in applying it to a different purpose.

The plaintiff was not bound to make inquiry, and mere negligence however gross, not amounting to wilful and fraudulent blindness, while it may be evidence of *mala fides*, is not the same thing.

The question whether the plaintiff had such knowledge or not is one of fact for the jury.

Where prayers are objected to because some of the propositions of fact contained in them, are not supported by the evidence, the objection ought not to prevail, where the defects pointed out by the objection, amount to nothing more than discrepancies between the evidence of the witnesses, and the facts stated in the prayers in regard to immaterial matters.

In an action against the maker of a promissory note, brought by the indorsee to whom it was passed as collateral security for the payment of notes discounted by the indorsee for the benefit of the indorser, the measure of the plaintiff's right of recovery is the amount due on the debts embraced by the security. And it is incumbent on the plaintiff to show what debts were intended to be secured by the note, and the amounts remaining due in respect thereof.

APPEAL from the Superior Court of Baltimore City.

The suit in which this appeal is taken, was brought by the appellee against the appellant on an accommodation promissory note. The case is stated in the opinion of the Court.

*First Exception.* Stated in the opinion of the Court.

*Second Exception.* The plaintiff offered the following prayers :

1. If the jury shall find from the evidence, that the plaintiff had been in the habit of discounting drafts for the firm of Phillips & Maitland, prior to the 10th of January, 1872, and that upon that day the said firm applied to the plaintiff to discount two drafts which the plaintiff declined to do, unless the said firm would furnish them with security, to the amount of $10,000 or $15,000, to cover any drafts which had theretofore been or should thereafter be discounted by the said plaintiff, for or on account of said firm, and that Burgwyn Maitland being a member of the said firm, stated to the cashier of the plaintiff, that the said firm was anxious to obtain the money on the said drafts on that day, and that if the said plaintiff

would discount them, he would bring the defendant's note for the amount named as such security on the next day; and shall further find, that the said plaintiff did discount the said drafts on the faith of the said promise, and that on the following day the said Maitland brought and delivered to the plaintiff the note offered in evidence by the plaintiff, and agreed that the plaintiff should hold the same as collateral security for drafts discounted, or to be discounted as aforesaid; and if they shall further find, that at the time of the institution of this suit, there was due from the said Phillips & Maitland to the plaintiff, on account of drafts discounted prior and subsequent to the promise of the said Maitland to furnish such security, a sum greater than the amount of the said note, then the plaintiff is entitled to recover the full amount of the said note, with interest in their discretion, from the maturity thereof.

2. If the jury shall find the facts set out in the plaintiff's first prayer, and shall further find that the said note was signed and given by the defendant to the said Burgwyn Maitland, under the circumstances stated in the evidence of the defendant, but that the said circumstances were not communicated to the plaintiff, and that the plaintiff took the said note, as stated in said first prayer, without any knowledge or notice of any limitation upon the authority of the said Burgwyn Maitland, as to the purpose for which the said note was to be used by him, then the plaintiff is entitled to recover the full amount of said note, with interest from the maturity thereof, in their discretion, and there is no evidence in the case from which they can find that the plaintiff had such knowledge or notice.

3. If the jury shall find from the evidence that the promissory note mentioned in the evidence was signed and given by the defendant to his son, under the circumstances stated in the evidence of the defendant, and shall further find that neither the defendant nor his said son informed the plaintiff that the authority of the said son of

the defendant to use the said note, had been in any way limited by the said defendant as stated in his the said defendant's testimony, and that the said plaintiff had no notice of such limitation of authority, and if they shall further find that the said note was endorsed and delivered by the payees therein named to the plaintiff, as security for any indebtedness on the part of the said payees to the plaintiff, on account of transactions prior or subsequent to the date of the said note, and shall further find that the plaintiff upon the faith of such endorsement and delivery, or promise of the said payee to endorse and deliver the same as such security as aforesaid, advanced money to the said payees, then the plaintiff is entitled to recover against the defendant the full amount of the said note, provided they shall find that there was due at the time of the institution of the suit, from the said payees to the plaintiff on account of such transactions, an amount equal to the amount of said note.

And the defendant offered the following prayers:

1. If the jury shall believe from the evidence, that at the time when the promissory note of the defendant here sued upon was deposited with the plaintiff's cashier, the said cashier knew that it was an accommodation note drawn in favor of and lent by the defendant to Phillips & Maitland for the purpose of being deposited with the plaintiff as collateral security, and received and accepted it as such with that knowledge; and shall further find that the defendant in lending his said note to be deposited as aforesaid with the plaintiff, authorized and consented only to its being pledged as security for the two drafts discounted on January 10th, 1872, and such other paper as plaintiff might subsequently discount for Phillips & Maitland and for none other, and executed and lent the said note to that firm for such specific purpose and application and none other; then the plaintiff is not entitled to recover against defendant on account of any indebtedness or liability of

Phillips & Maitland to plaintiff, for discounts prior to January 10th, 1872, of paper not matured when said pledge was made, even although the jury shall find that Burgwyn Maitland did in fact pledge the said note to the plaintiff to secure it against loss from such previous discounts as testified to by Mr. Guest, and that Mr. Guest believed he had authority to do so.

2. If the jury believe that the note sued on was an accommodation note, known to and received by Mr. Guest as such, and was lent by defendant to Phillips & Maitland to be lodged with the plaintiff, as collateral security, to the knowledge of Mr Guest; and shall further find, that the defendant did not authorize Phillips & Maitland in lending said note to them, to pledge it for any liability of theirs upon any transactions with plaintiff prior to January 10th, 1872, and that they had no right as between him and them to do so, but that Burgwyn Maitland did, nevertheless, pledge it, as testified to by Guest, as security for prior discounts of paper not then matured, and in excess of the authority given to him by the defendant as aforesaid; the existence of such pre-existing liability on the part of Phillips & Maitland to plaintiff, furnishes no sufficient consideration for such pledge to bind the defendant therefor; and he is not liable thereunder in this action.

3. If the jury shall find from the evidence, that the promissory note sued on in this case was made by the defendant for the accommodation of Phillips & Maitland, the payees thereof, and without any value or consideration paid by them to him therefor, and was given by him and received by them, with the agreement that the said note should be left with the plaintiff, as collateral security, for the payment of the two drafts of January 10, 1872, drawn by said Phillips & Maitland, and discounted by the plaintiff for them, and for the payment of any other drafts which said Phillips & Maitland might thereafter draw and have discounted by the plaintiff, and for no other

35        

purpose; and that the procurement of said note by said Phillips & Maitland, from the defendant, was obtained because of the suggestion of the cashier of the plaintiff, that said firm should obtain from the defendant his note to be left with the plaintiff, as collateral security; and shall further find, that said note was left by said Phillips & Maitland, with the plaintiff, on the 11th January, 1872, as collateral security, not only for the said drafts, dated January 10th, 1872, and all drafts which might thereafter be drawn by the said Phillips & Maitland, and discounted by the plaintiff for them, but also for all drafts of said Phillips & Maitland, which had been discounted by said plaintiff prior to the said 10th January, 1872, and were then running, then the plaintiff is not entitled to recover against the defendant the amount of any drafts which had been drawn by said Phillips & Maitland, and discounted by the plaintiff prior to the 10th January, 1872, nor for any other indebtedness on the part of said Phillips & Maitland, except the amount of such of the drafts drawn by the said Phillips & Maitland, on or after the 10th January, 1872, and discounted by the plaintiff, as were not paid to the plaintiff.

4. If the jury find from the evidence that the promissory note sued on was lent and delivered by the defendant to Phillips & Maitland with the limited authority, for the use and application thereof, as collateral security to the plaintiff, which is testified to by the defendant's witnesses, the burden of proof is upon the plaintiff to satisfy the jury that the said note was pledged to the plaintiff to any extent, or for any purpose not so authorized by the defendant; provided, the plaintiff seeks to recover under such unauthorized pledge.

5. If the jury find from the evidence that the note sued upon was not pledged by Phillips & Maitland to the plaintiff, as security for previous discounts, but only as security for the drafts discounted on January 10th, 1872, and

thereafter to be discounted, as testified to by Burgwyn Maitland, the plaintiff is not entitled to recover in this case, on account of any liability of Phillips & Maitland, by reason of such previous discounts, and can only recover for such loss as the plaintiff may have incurred by the discount of the drafts of January 10th, 1872, and of drafts discounted thereafter.

The defendant excepted specially to the plaintiff's prayers, as follows:

The defendant objects to the granting of the plaintiff's first and second prayers, because there is no evidence in the cause that the plaintiff refused to discount any drafts from Phillips & Maitland, on 10th January, 1872, unless said firm would furnish them with security to the amount of $10,000 or $15,000 to cover any drafts which had been theretofore or should thereafter be discounted by plaintiff for and on account of said firm; or that Burgwyn Maitland stated to the plaintiff's cashier, that if the plaintiff would discount any bills on said 10th January, 1872, he would bring defendant's note for the amount aforesaid as such security, of all of which facts the said prayers wrongfully assume that there is evidence to go to the jury. Defendant further objects to the said prayers, because they assume that the jury may find that the plaintiff discounted the two drafts therein particularly referred to, on the faith of a promise of B. Maitland to give security to the amount of $10,000 or $15,000, to cover the drafts previously discounted by the plaintiff, or drafts thereafter to be discounted by it, of which facts defendant submits there is no evidence to go to the jury. Defendant objects to plaintiff's third prayer, because there is no evidence as it assumes, to show that plaintiff would not have discounted certain drafts therein referred to, but for the endorsement and delivery to plaintiff of defendant's note as security for antecedent discounts. Defendant further objects to the granting of the said first, second and third prayers of

plaintiff, because they leave to the jury to find that plaintiff had no knowledge or notice of the limitation of authority on the part of Burgwyn Maitland, or Phillips & Maitland, as to the use to be made of defendant's note, which knowledge and notice in this case defendant submits are matters of law.

The Court (DOBBIN, J.) granted the prayers of the plaintiff, and rejected the first, second, third and fourth prayers of the defendant. The fifth prayer of the defendant was conceded. The defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Bernard Carter* and *S. Teackle Wallis,* for the appellant.

The Court erred in allowing the question excepted to to be asked, and in admitting the evidence of the witnesses given in response thereto. The appellee, when objection was made to the propounding of the question, stated its object to be, to corroborate the statements made on the witness stand by Mr. Guest, its cashier, by showing he had made similar statements shortly after the giving of the promissory note sued on in this case.

There is no disposition to call in question the principle established by the decisions of this Court, in the cases of *McAleer vs. Horsey,* 35 *Md.,* 441, 462; *Washington F. Ins. Co. vs. Davison,* 30 *Md.,* 104; *Cook vs. Curtis,* 6 *H. & J.,* 93.

Accepting the proposition on this subject, announced in these cases, and remembering at the same time the remark of the Court in 35 *Md.,* 463, 464, that "it would not be safe to extend or enlarge the application of the rule," we yet contend that the question allowed to be asked, and evidence admitted under it in this case, was not properly allowed to be asked or admitted.

The principle established in the cases cited, is, that in order to corroborate the witness, it may be shown that on a previous occasion, he has made the same statements as those made on the witness stand. And accordingly, the appellee's counsel stated to the Court below, that its object in offering the evidence, was for the purpose of corroborating the statements made on the witness stand, by showing he had made similar statements shortly after giving the note in question. To determine therefore, whether the question as propounded, and the evidence as given, came within this principle, the statements made on the witness stand by Guest must be examined.

These statements will be found to amount to this in substance, so far as this point is concerned: that having received certain instructions from the bank, he communicated these to Burgwyn Maitland, and also told him what the firm of Phillips & Maitland must do if they expected any further bank accommodations, that is, they would have to give security for what paper of theirs the bank already had, as well as for what it might thereafter take, and suggested to him to give his father's note as security; to which young Maitland replied he thought he could get his father's note, and several days after this brought the note now in suit and left it with Guest. These are the statements of Guest, which it was sought to confirm by the admission of the declarations, whose admission is excepted to.

What do the statements as made by Guest, on the witness stand, in substance amount to? They amount to a statement of a certain *conversation* held by him with young Maitland prior to the delivery of the note sued on.

Now the only evidence which comes within the principle of the cases above cited, would be evidence of witnesses to prove that Guest had given to them the same account of the conversation between himself and young Maitland as he had given on the witness stand. *McAleer vs. Horsey,* 35 *Md.,* 464.

Look at the evidence as actually admitted against the protest of the appellant. Here you find no statement of the conversation between Maitland and Guest given. But on the contrary, a statement of a certain fact or general result of the doings of him, the said Guest, and that the note of defendant was to be held as collateral security for certain drafts. Not that Guest *said* to these witnesses that young Maitland had *said the things* which he, Guest, testified to on the stand, Maitland had said, which was the only shape in which the evidence was admissible ; but Guest's declaration of what he, Guest, had done ; that is, that he had got the note, and what was to be done with it, viz : that it was to be held by the bank as collateral ; which latter, it is not alleged, Guest said to these witnesses young Maitland had agreed to. Such testimony does not come within the the the case of 35 *Md.,* 462, and was clearly hearsay, and also calculated to produce a wrong impression on the jury, as they might infer from this statement, thus declared to be admissible evidence, that the defendant himself had in some way agreed that the note was to be held for the purpose stated by Guest.

The principle of the case of 35 *Md.,* 464, is not to be extended; and the admission of this evidence would be an extension.

In discussing the legal propositions involved in the several prayers offered by the defendant, and rejected by the Court, or the objections to the plaintiff's prayers, the general propositions contended for, may be stated as follows:

1st Proposition. That while negotiable paper, transferred for valuable consideration, in usual course of trade, *bona fide,* and without notice, or under such circumstances as do not put the party taking it, upon enquiry as to the right of the person transferring, will give a good title to the transferree even against the real owner, and freed from the equities between the original parties to the note. Yet, such a result is an exception to the general rule, applica-

ble to all other kinds of property, and is founded only in commercial policy, and exists only because the innocent holder, in such cases, has parted with money or property, or incurred loss on the faith of the transfer of the note. *Jones vs. Hardesty,* 10 *G. & J.,* 420 ; *Bay vs. Coddington,* 5 *Johns. Ch.,* 56, and 20 *Johns.,* 644 ; *Miller vs. Farmers & M. Bk.,* 30 *Md.,* 329.

2nd Proposition. The principle upon which the title of the transferree prevails against that of the true owner, where the transfer was unauthorized as between such owner and the transferer, does not apply to cases where the note is transferred as collateral security for a pre-existing debt ; nor to any case, unless money, property or other rights, are parted with in exchange for such note at the *time of the transfer.* *Gwynn & Co. vs. Lee, et al.,* 9 *Gill,* 137 ; *Farrington vs. Frank. Bk.,* 24 *Barbour,* 554 ; *Smith vs. Van Loan,* 16 *Wendell,* 659 ; *Bank of Mobile vs. Hall,* 6 *Alabama,* 639 ; *Stalker vs. McDonald,* 6 *Hill,* 93 ; *Jenness vs. Bean,* 10 *N. Hamp.,* 266 ; *Williams vs. Little,* 11 *N. Hamp.,* 71 ; *Coddington vs. Bay,* 20 *Johns.,* 644 ; *Goodman vs. Simonds,* 20 *Howard,* 343 ; *Becker vs. The Sandusky City Bank,* 1 *Minn.,* 319 ; 2 *Am. Leading Cases,* 146 (5th Ed.;) *Desseau vs. Waddington,* 6 *Whart.,* 232 ; 1 *Am. Leading Cases,* 333, 422 ; *Wormley vs. Lowry,* 1 *Hump.,* 470 ; *Sumwalt vs. Ridgely,* 20 *Md.,* 107.

3rd. Proposition. Where a note is made for the accommodation of the payee, if he, without right, put this note into circulation, it is then incumbent, that is to say, the burden of proof, is on the holder to show that he had paid value, parted with property, or gave credit on the faith of the paper at the time of the transfer, and taking it in payment of a pre-existing debt would not be such a consideration as would make a superior equity to that of the true owner. *Smith vs. Van Loan,* 16 *Wendell,* 659 ; *Atkinson vs. Brooks,* 26 *Verm.,* 569.

Where authority is given to an agent to accept a draft for a particular purpose, and agent accepts for a different

purpose, and draft so accepted is used by payee to discharge an antecedent debt, acceptor will not be responsible. Where the circumstances are such as to put a party taking the note on enquiry as to the right of the transferrer, and he makes no enquiry, the right of the true owner, or equities as between the original parties, will prevail against holder.   *Nixon vs. Palmer,* 4 *Selden, N. Y.,* 400.

In applying these principles to the defendant's prayers, the first, second and third prayers may be considered together, as they practically involve the same general principles of law.   By these prayers we concede the right of the plaintiff to recover the amount of the drafts discounted for Phillips & Maitland, on and after 10th January, 1872, but we, in the prayers, deny the right of recovery as to these drafts discounted previously to the 10th January, and which were then running.

The ground of our denial of this recovery rests on the principles above stated, for which we have cited the decisions above given.

1st. That such prior drafts not having then matured, if the note was deposited as collateral security for them in violation of the rights of defendant as between him and the payees, such transfer was not within the true meaning of the phrase, in the usual course of business and for valuable consideration.   (See cases cited under 2nd proposition.)

2nd. Knowledge on the part of the cashier of plaintiff, (the only person connected with the plaintiff, with whom the transaction took place,) that note had been obtained by payees from defendant as an accommodation note, to be deposited as collateral security, and consequently that it was taken by cashier at his risk, in the absence of enquiries to ascertain the extent of the authority of the payees, and for what liabilities they were authorized to pledge it. *Smith vs. Van Loan,* 16 *Wendell,* 659 ; *Nixon vs. Palmer,* 4 *Selden,* 400 ; *Farrington vs. Frankfort Bank,* 24 *Barbour,* 554.

Maitland, Jr., was, under all the circumstances of the case, the agent as well of the cashier as of the defendant. The defendant's fourth prayer should also have been granted. 16 *Wendell,* 659; 4 *Selden,* 400; 10 *G. & J.,* 420; 2 *Parsons on Bills and Notes,* 438; *Millis vs. Barber,* 1 *M. & Wels.,* 431; *Hutchinson vs. Boggs & Kirk,* 28 *Penn.,* 294.

The plaintiff's prayers are inconsistent with the principles stated, when considering the defendant's prayers.

*John H. Warner* and *Robert D. Morrison* for the appellee.

The testimony objected to under the first exception, was properly admitted under the authority of the Maryland cases of—*Cook vs. Curtis,* 6 *H. & J.,* 93; *Wash. Fire Ins. Co. vs. Davison and Symington,* 30 *Md.,* 91; *McAleer vs. Horsey,* 35 *Md.,* 439.

A party taking a negotiable instrument, in good faith, as security for an antecedent debt, and without any further consideration, holds the same unaffected by the equities between the original parties. 3 *Kent Com.,* 80, &c.; *Swift vs. Tyson,* 16 *Peters,* 15, and cases therein cited; *Story on Prom. Notes, sec.* 195, *note* 1; 1 *Parsons on Notes and Bills,* 218, *et seq.;* 2 *Am. Leading Cases,* 229, *et seq.,* 232, 223, 243; *Williams vs. Little,* 11 *N. H.,* 66; *Stoddard vs. Kimball,* 6 *Cush.,* 469; *Chicopee Bk. vs. Chapin,* 8 *Metc.,* 40; *Lord vs. Ocean Bank,* 20 *Penn.,* 384; *Manning vs. McClure,* 36 *Ills.,* 490; *Stevenson vs. Heyland,* 11 *Minn.,* 198; *Lathrop vs. Morris, et al.,* 5 *Sandf.,* 7; *Bk. of New York vs. Vanderhorst,* 1 *Robertson,* 216, *et seq.;* *McCarty vs. Roots,* 21 *Howard,* 439.

All authorities agree that where a note is transferred as security for a pre-existing debt, and upon any new consideration, such as a further advancement, &c., the holder is altogether unaffected by any equities. *Story on Prom. Notes, sec.* 195, *and note;* 1 *Parsons on Bills and Notes,* 218, *et seq.;* *Stalker vs. McDonald,* 6 *Hill,* 93.

554 MARYLAND REPORTS.

Maitland *vs.* The Citizens' Natl. Bank of Balto.

In 2 *American Leading Cases*, 242, it is said—

"The rule, that the transfer of a note or bill, as security for an antecedent debt, will not raise the title of the endorsee higher than that of the endorser, meets with an exception where the instrument is executed for the accommodation of the payee, with a view of enabling him to obtain credit from third persons."

A further exception is made to the plaintiff's prayers because it is alleged that they submit to the jury the question as to whether the plaintiff had any knowledge or notice of the limitation of the authority of Maitland, Jr., to pledge the note, which question, as put, is claimed to be a question of law.

The language of the prayers shews that *actual* notice or knowledge of the limitation of authority was the matter submitted to the jury, and the appellee contends that actual knowledge or notice of the alleged limitation of authority would be necessary to affect the plaintiff.

In *Goodman vs. Harvey*, 4 *Adol. & Ellis*, 870, Lord DENMAN said, "when a bill of exchange has passed to the plaintiff without any proof of *bad faith* in him there is no objection to his title." *Cecil Bank vs. Heald*, 25 *Md.*, 574; *Davis vs. W. S. Bd'g Union*, 32 *Md.*, 285; *Matthews vs. Poythress*, 4 *Georgia*, 287; *Goodman vs. Simonds*, 20 *Howard*, 366.

The first prayer of the appellant is defective, if for no other reason, because it assumes there was no evidence in the case that the cashier of the plaintiff knew that the note was an accommodation note. There was no such evidence in the case—and if there were, the law of the prayer is. erroneous. *Renwick vs. Williams*, 2 *Md.*, 356; *Lord vs. Ocean Bank*, 20 *Penna.*, 384; *Davis vs. W. S. Bd'g. Union*, 32 *Md.*, 285; *Fulweiler vs. Hughes*, 5 *Harris*, 440; *Moore vs. Baird*, 6 *Casey*, 139.

The appellant's prayer is obnoxious to the same objection as to the assumption of evidence not in the case, and

because it treats the case as though it stood upon the antecedent debt as the sole consideration. The first and second prayers are both contrary to the law of the case of *Davis vs. W. Saratoga Build. Union*, 32 *Md.*, 285, because it seeks to affect the plaintiff by a limitation of authority of which it had no notice.

The third prayer of the appellant is defective because the mere fact that the cashier suggested that Phillips & Maitland should obtain the defendant's note, or some other collateral, is not sufficient from which to infer that the plaintiff knew, or should be put upon inquiry as to the authority of Burgwyn Maitland, or as to the equities between the original parties.

The instrument being a promissory note in the usual form without limitation of any sort upon its face, the plaintiff had a right to take it as it did, and the antecedent debt was a good consideration even if there had been no other, but certainly as a part of the whole contract it is good and cannot be lopped off.

This prayer is also against the law in *Davis vs. W. Saratoga Build. Union*, already quoted.

That the fourth prayer was properly rejected, see *Davidson vs. Lanier*, 4 *Wallace*, 447. Even if the prayer was good law, it was properly rejected, because the plaintiff, in all its prayers, had assumed the burden of proof, and the defendant had the full benefit of the proposition, as to the burden of proof, by the concession of his fifth prayer, which said to the jury, in effect, if you do not believe Guest you cannot allow the plaintiff for the antecedent indebtedness; to have granted the fourth prayer would have been to embarrass the jury.

ALVEY, J., delivered the opinion of the Court.

This appeal is taken from a judgment of the Superior Court of Baltimore City, rendered in an action on a promissory note, of which the defendant was maker, for

$10,000, dated January 11th, 1872, payable four months after date, to the order of Phillips & Maitland, and by them endorsed to the plaintiff. The note was protested for non-payment at maturity.

The declaration was in the usual form, and the pleas were, that the defendant never was indebted as alleged, and that he did not promise as alleged.

At the trial, two bills of exceptions were taken by the defendant; the first to the ruling of the Court in admitting certain evidence offered by the plaintiff; the second to the rulings of the Court in granting the three prayers offered by the plaintiff as instructions to the jury, and the refusal to grant the first, second, third and fourth prayers offered by the defendant.

Before proceeding to consider the specific questions presented by the bills of exception, in order the better to understand the nature of the transaction out of which the controversy arose, we shall state briefly the leading facts of the case as disclosed by the record.

The son of the defendant and a party by the name of Phillips, composed the firm of Phillips & Maitland, a house doing business in the City of Baltimore at the time of the making the note sued on. This firm, for some time prior to the date of the note, had kept an account with the plaintiff, and had received from the latter discounts of drafts or bills drawn upon certain houses in New York to a considerable amount. While the account was still running, in consequence of some distrust as to the solvency of the house of Phillips & Maitland, the bank, by its directors, after examining into the state of the account, instructed its cashier, Mr. Guest, to call upon Mr. Maitland, of the firm of Phillips & Maitland, for collateral security. This instruction was given the cashier some time between the 5th and 10th of January, 1872; and on the last mentioned date, Mr. Maitland presenting himself at the bank, had his attention called to the instruction of

the board of directors by the cashier, with a request that the security should be furnished; but whether the security required by the board of directors and demanded by the cashier was for all existing indebtedness of the firm to the bank as well as for all indebtedness that might thereafter be contracted with it, is the controverted question in the case. According to the testimony of the cashier, Guest, the demand was for collateral security for all drafts then held, as well as for all that might thereafter be discounted for the firm; and the giving of the defendant's note as collateral security was suggested to Mr. Maitland, Jr., by the cashier himself. On the other hand, it was proved on the part of the defendant, that security was only required, and therefore only given, for drafts thereafter to be discounted, including two drafts discounted on the 10th of January, 1872. Phillips & Maitland failed on the 15th of January, 1872, and, according to the testimony of the plaintiff's cashier, of the drafts discounted for the firm from the 10th of January to the day of their failure inclusive, the sum of $5,681 remains unpaid, and of drafts discounted for them previous to the 10th of January, 1872, there remain unpaid over $15,000.

The defendant himself testified that he had no interest in the business of Phillips & Maitland, and no connection whatever with that house, but on the 11th of January, 1872, he signed the note in suit, and gave it to his son, Burgwyn Maitland, for the purpose of being left with the plaintiff as collateral security for the payment of the two drafts which had been discounted by the plaintiff for Phillips & Maitland, on the 10th of January, 1872, and of any drafts which that house might thereafter get discounted by the plaintiff; that he did not take the note to the bank himself, nor accompany his son to the bank, nor had he any interview on the subject with any officer of the bank; that the note when signed by him was in blank, as to the amount and time of payment, his son having

authority to fill both blanks when he took it to the bank, provided the amount did not exceed $10,000. The defendant further testified that the note was given to Phillips & Maitland for the purpose stated, in response to a request made of him on the evening of the 10th of January, 1872, by his son, Burgwyn Maitland, who stated to him, that the plaintiff's cashier had, on that day, declined to discount two drafts drawn by Phillips & Maitland, unless he, the son, would bring defendant's note, or some other security, as collateral, for their payment in case they were not paid by the persons on whom they were drawn. The note was, therefore, made for accommodation of the house of Phillips & Maitland, and, according to the testimony of the defendant, was only to be used as collateral security for the two drafts discounted on the 10th of January, and such other drafts as should thereafter be discounted for that house.

The defendant, therefore, contends that he is only liable on the note for any balance that may remain due on the two drafts discounted on the 10th of January, 1872, and on any subsequent drafts that may have been discounted by the plaintiff for Phillips & Maitland; while, on the contrary, the plaintiff contends that the note was given as collateral security for all drafts discounted for Phillips & Maitland, which remained unpaid at the time of their failure, as well those discounted before as after the 10th of January, 1872, and consequently it is entitled to recover to the extent of the face of the note, if the indebtedness of Phillips & Maitland is as much as or more than that sum.

Such being the nature of the controversy between the parties, as disclosed by the evidence, the plaintiff, on the trial, for the purpose of corroborating the testimony of its witness, Guest, in some particulars in regard to which the latter was in conflict with the testimony of Burgwyn Maitland, a witness for the defendant, as to the debts for which the collateral security was required to be furnished,

offered to prove by its president and two of its directors, the statements made by Guest to them soon after the transaction; and, under the ruling of the Court, was allowed to prove that Guest, a few days after the 11th of January, 1872, and before the failure of Phillips & Maitland, stated to the board of directors that he had obtained from Phillips & Maitland the defendant's note for $10,000, which was to be held by the bank as collateral security for all drafts which it was carrying—that is, which it had discounted at the date of the note, as well as for all drafts which it might discount subsequent to that date, for that house. To the allowance of the question to be propounded to the witnesses, as also to the admissibility of the evidence elicited thereby, the defendant objected, and the objection being overruled, such ruling forms the subject of the first exception.

This exception presents a question that has been upon several occasions before this Court, as in the cases of *Cook vs. Curtis*, 6 *H. & J.*, 93; *Washington Fire Ins. Co. vs. Davison*, 30 *Md.*, 104, and *McAleer vs. Horsey*, 35 *Md.*, 441. The rule recognized and applied in those cases would seem to be an exception to the general principle which excludes all mere hearsay evidence, because *ex parte* and without the sanction of an oath. But the evidence admitted under it is not admitted to prove or disprove any fact involved in the issue on trial, but simply to corroborate or support the credibility of the witness who may be in some manner impeached. It is a rule, however, not very generally recognized in the Courts of England, or of other States of this country, and it should not be extended, but applied strictly. The Legislature, at its last session, abrogated the rule entirely as applied to the case of a party to the cause who may be examined as a witness, (*Act* 1874, *ch.* 386,) but left it in force as applicable to other witnesses.

The object of the rule is to allow a party, whose witness is impeached, to show that the witness has been consistent

in giving the same narrative of fact; that his former statements, when without interest or motive to falsify the truth, consist with his sworn testimony as given on the trial; and thus, to some extent, remove suspicion that his testimony has been fabricated to meet the emergencies of the case, or that his recollection has varied, and is therefore not to be relied on. But, in order that the rule may be properly applied, and the evidence admitted under it furnish the foundation for some rational presumption in corroboration of the witness's credibility, it should appear that there is real or substantial similarity, in facts and circumstances, between the unsworn and the sworn statements. Evidence of mere conclusions or deductions from certain transactions, formerly declared by the witness, do not corroborate or support the credibility of his evidence, consisting of what professes to be the particular facts occurring in the transaction. His opinions or conclusions may have been erroneously founded, or drawn from very different facts from those testified to by him. The former unsworn statements, as compared with his testimony on the trial, should furnish some test of the witness's recollection, as well as of his integrity. In this case, the witness Guest had testified to the particulars of a conversation and as to an understanding with Maitland, Jr., in regard to the collateral security required by the bank, and as for what that security was really given; and in the evidence offered in corroboration, instead of consisting of a similar narrative of the facts to that testified to, the mere general statements or conclusions of the witness are given, that the note of the defendant was to be held as collateral security for all drafts discounted by the bank and remaining unpaid, whether prior or subsequent to the date of the note. This may have been the witness's conclusion at the time, founded upon a state of facts quite dissimilar to those proved by him, and which, if those facts had been stated, might have rather tended to impeach than corroborate his

evidence. We think, therefore, that there was error in the ruling on the exception to the admissibility of this evidence.

We come now to the main questions involved in the case, and they arise upon the prayers offered by the parties, plaintiff and defendant. And in considering the questions thus presented, it must be borne in mind throughout, that the note sued on was made purely as an accommodation note,—was indorsed to the plaintiff simply as collateral security, and that the right of recovery thereon is maintained by the plaintiff only in respect to the amounts due from the indorsers on the debts for which the note was intended as security. With respect to these propositions there is no controversy.

The controverted questions raised by the prayers, particularly those of the defendant, which were rejected, are: 1st. Whether an indorsee of a negotiable promissory note, made for the accommodation of the indorser, taking the note in good faith, as collateral security for an antecedent debt, and without other consideration, is entitled to the position of holder of such paper for value, and therefore not affected by the defence of the want of consideration to the maker. 2ndly. To what extent, if at all, is the indorsee and holder of the note affected by the fact that the note was made and delivered to the payees, to be used as collateral security only for certain debts, and the payees, disregarding the purpose for which the note was made and delivered to them, pledged it as security for other debts, in addition to those contemplated by the maker; and 3rdly, Upon whom is the *onus* of proof, as to the debts protected by the security, and the amount for which the plaintiff is entitled to recover, under the circumstances of the case.

1. As a general proposition, we think it may be affirmed, as the result of all the well considered cases upon the subject, that it is no defence that the note sued on was known to the plaintiff to be an accommodation note between the

36        40 v.

maker and the payees, provided the plaintiff took the note for value, *bona fide,* before it was due. The reason is, as stated by Mr. Justice STORY, in his work on *Promissory Notes,* sec. 194, that the very object of every accommodation note is, to enable the payee, or other party accommodated, by sale or negotiation, to obtain a free credit and circulation of the note ; and this object would be wholly frustrated, unless the purchaser, or other holder for value, could hold such a note by as firm and valid a title as if it · were founded in a real business transaction. Indeed, the parties to every accommodation note hold themselves out to the public, by their signatures, to be absolutely bound to every person who may take the same for value, to the same extent as if that value were personally advanced to them, or on their own account, and at their request. And according to the doctrine laid down by Judge STORY, every person is within the rule, and entitled to the protection of a *bona fide* holder for value, who has received the note in payment of a precedent debt, or has taken it as collateral security for a precedent debt, or for future as well as past advances. This latter·proposition, to the full extent here stated, is maintained by Judge STORY in his work on *Bills, sec.* 192, and in his work on *Promissory Notes, sec.* 195, and is supported by the citation of many authorities, both English and American.

The principle thus stated by Judge STORY, so far as it asserts that a party who receives a negotiable note simply as collateral security for a precedent debt is entitled to protection as holder for value, has, it is true,·been controverted in some quarters ; and the cases in which the principle has been repudiated, or its correctness denied, have been pressed upon the Court in the argument of the present case. But the reasoning of those cases does not convince us of the correctness of the conclusions maintained by them.

The leading American case upon this subject is that of *Swift vs. Tyson,* 16 *Pet.,* 1. In that case the Supreme

Court of the United States, by Mr. Justice STORY, stated fully the grounds upon which the principle rests, that he who receives a negotiable instrument, as a promissory note, in payment of, or as collateral security for, a precedent debt, without other consideration, is a holder for value, within the rule of protection against antecedent equities. In the course of the opinion, the Court said: "It becomes necessary for us, therefore, upon the present occasion, to express our own opinion of the true result of the commercial law upon the question now before us. And we have no hesitation in saying, that a pre-existing debt does constitute a valuable consideration in the sense of the general rule already stated, as applicable to negotiable instruments. Assuming it to be true (which, however, may well admit of some doubt from the generality of the language,) that the holder of a negotiable instrument is unaffected with the equities between the antecedent parties, of which he has no notice, only where he receives it in the usual course of trade and business for a valuable consideration, before it becomes due; we are prepared to say, that receiving it in payment of, or as security for, a pre-existing debt, is according to the known usual course of trade and business. And why, upon principle, should not a pre-existing debt be deemed such a valuable consideration? It is for the benefit and convenience of the commercial world to give as wide an extent as practicable to the credit and circulation of negotiable paper, that it may pass not only as security for new purchases and advances, made upon the transfer thereof, but also in payment of and as security for pre-existing debts. The creditor is thereby enabled to realize or to secure his debt, and thus may safely give a prolonged credit, or forbear from taking any legal steps to enforce his rights. The debtor also has the advantage of making his negotiable securities of equivalent value to cash. But establish the opposite conclusion, that negotiable paper cannot be applied in payment of or as security for pre-ex-

564        MARYLAND REPORTS.

Maitland *vs*. The Citizens' Natl. Bank of Balto.

isting debts, without letting in all the equities between the original and antecedent parties, and the value and circulation of such securities must be essentially diminished, and the debtor driven to the embarrassment of making a sale thereof, often at a ruinous discount, to some third person, and then by circuity to apply the proceeds to the payment of his debts.''

The principle thus asserted in *Swift vs. Tyson*, appears to have been sanctioned and followed by the Courts in many of the leading commercial States of the Union, as in Massachusetts, Connecticut, New Jersey, California, Illinois, Indiana, Missouri, Louisiana, South Carolina, Rhode Island and Vermont, as will be seen by reference to the judicial reports of those States. 6 *Cush.*, 469; 1 *Allen*, 502; 98 *Mass.*, 303; 29 *Conn.*, 475; 37 *Id.*, 205; 1 *Zabr.*, 665; 14 *Cal.*, 94; 36 *Ill.*, 490; 1 *Carter*, 288; 38 *Mo.*, 49; 18 *Louisiana Ann.*, 222; 11 *Rich.*, 657; 5 *R. I.*, 515; 7 *Id.*, 550; 26 *Vt.*, 574. While, on the other hand, the Courts of New York, and those of some of the other States, following the case of *Bay vs. Coddington*, 5 *John. Ch. R.*, 56, *S. C.*, 20 *John.*, 637, have held that it is not sufficient to protect the note in the hands of the holder, that he received it merely as collateral security for a pre-existing debt, or even as nominal or conditional payment of such debt, unless he had given some new consideration for it; that a note so taken is not received or negotiated in the usual course of trade. But Chancellor KENT, who gave the opinion in *Bay vs. Coddington*, and which, upon the same reasons assigned by the Chancellor, was affirmed in the Court of Errors, while stating the law in the text of his Commentaries, vol. 3, p. 81, in accordance with that opinion, has appended a note, in which he said he was inclined to concur in the decision of *Swift vs. Tyson*, as the plainer and better doctrine.

Subsequently, the doctrine has been mooted in the Supreme Court of the United States, upon the theory that the

case of *Swift and Tyson* did not call for the decision of the broad and comprehensive question, whether the holder of a negotiable note, received simply as collateral security for a pre-existing debt, should be regarded as a holder for value, and, if received *bona fide*, protected against antecedent equities.    In the case of *Goodman vs. Simonds*, 20 *How.*, 343, the question was much discussed, and though the facts of that case did not require the expression of a direct opinion upon the subject, yet it is not difficult to perceive the inclination of the Court in favor of the principle of their former decision; as they take care to fortify it by showing that it is in accordance with the decisions in England, and in many of the States of this country.    In the later case of *McCarty vs. Roots*, 21 *How.*, 432, 439, which arose on the indorsement of an accommodation bill, and where the defendant pleaded that the bill had been delivered to the plaintiff by the indorser as collateral security for a pre-existing liability of the indorser, and for no other consideration, upon demurrer to the plea, and the demurrer being sustained by the Court below, the Supreme Court held the demurrer properly sustained, and expressly declare that the delivery of the bill to the plaintiff *as collateral security for a pre-existing debt*, under the decision of *Swift vs. Tyson* was legal, and consequently the plaintiff was entitled to recover.    The principle, therefore, may be taken to be established in the Supreme Court, and, indeed, in the entire Federal jurisdiction of the country ; as upon commercial questions the State adjudications are not accepted by the Federal Courts as binding rules of decision.

In this State, there has been no decision of the Appellate Court, going to the extent of maintaining fully the doctrine of the cases in the Supreme Court, to which we have referred.    In the case of the *Cecil Bank vs. Heald, et al.*, 25 *Md.*, 563, this Court held that a *bona fide* holder of negotiable paper, for value, without notice, will be protected against the antecedent equities existing between the origi-

566 MARYLAND REPORTS.

Maitland *vs.* The Citizens' Natl. Bank of Balto.

nal parties, and that such holder is entitled to protection where he has received the paper in payment of an antecedent debt, regarding such debt as a valuable consideration; and the case of *Swift vs. Tyson* was so far approved, as it declared that the receiving of negotiable paper in payment of a pre-existing debt is according to the known usual course of trade and business. The Court, however, declined expressing any opinion upon the rights of a holder of a negotiable instrument received by him *as security* for a pre-existing debt.

The case of *Miller vs. The Farmers and Mechanics' Bank of Carroll Co.*, 30 *Md.*, 392, has been relied on by the counsel of defendant, as maintaining a doctrine somewhat at variance with that maintained in *Swift and Tyson*. But we are not of that opinion. The case of *Miller vs. The Bank*, was the ordinary case of a bank asserting its lien upon securities in its hands for the payment of balances due from its customers. According to the law of the land, the bank, a kind of factor in pecuniary transactions, was entitled to a lien upon all the securities for money of its customers in its hands for its advances to such customers, in the ordinary course of business, without reference to the true ownership of such securities, if the bank was without knowledge upon the subject; (*Davis vs. Bowsher*, 5 *T. R.*, 488; *Collins vs. Martin*, 1 *B. & P.*, 648; *Barnett vs. Brandao*, 6 *M. & Gr.*, 630;) and the question was, whether the bank had received the note from its customer, in its usual course of dealing, without notice of the true ownership, and whether any credit had been given on the faith of it.

There being then no adjudication in the State to restrict the application of the principle as maintained in the decisions of the Supreme Court to which we have referred, we have no hesitation in giving to it our full approval; believing it to be supported by reason, and the usual and ordinary course of dealing in the commercial community,

as well as by a decided preponderance of judicial authority. Indeed, so well established is the principle, as applicable to accommodation paper, that we find Mr. Parsons, in his work on *Notes and Bills,* 1 *vol., p.* 226, stating that it is universally conceded that the holder of an accommodation note, without restriction as to the mode of using it, may transfer it, either in payment, or as collateral security for an antecedent debt, and the maker will have no defence.  See also *Lord vs. Ocean Bank,* 20 *Penn. St. Rep.,* 384.

Applying the principle just stated to the case before us, and there can be no doubt of the sufficiency of the consideration for the transfer of the note to the plaintiff, whether it was as collateral security for a pre-existing or a contemporaneous debt, or to secure future discounts or advances, or all combined.   In either case, the consideration would be valuable in the sense of the rule which protects the holder of negotiable paper, and the plaintiff be entitled to the full benefit of the security, unless *mala fides,* or notice of such facts as will impeach its title to the note be shown.   And this brings us to the consideration of the second question, raised by the prayers of the defendant.

2. The defendant himself proved that the note was furnished the payees to be used as security for the two drafts of the 10th of January, 1872, and any subsequent drafts that might be discounted by the plaintiff for the payees in the note, and for that purpose only ; and consequently the payees exceeded their authority in the use of the note, if they did in fact pass it to the plaintiff as collateral security for prior discounts as well as those on the 10th of January, and any that might subsequently be made.   But the question is, who is to bear the consequence of this excess of authority ?   Plainly, we think, not the plaintiff, unless it be shewn that the note was taken by it with knowledge of the fact that the payees had exceeded their

authority in the use of the note. If the fact of such knowledge be established, then, clearly, the plaintiff would be affected by it, and could have no right to recover except for amounts due on the discounts for which the note was authorized to be pledged. With such knowledge of the excess of authority, or misappropriation by the payees the plaintiff in taking the note would have acted in bad faith, and having so acted would be liable to have its title to the note effectually impeached. It is a general proposition, laid down in all the authorities upon the subject, that, while it is no defence to an action by an indorsee for value against the maker of an accommodation note, who has received no consideration, that at the time the plaintiff took the note he knew it was such accommodation paper, yet, if he received it of a person who held it for a particular purpose, and was therefore guilty of a breach of duty in appropriating it to a different purpose from that intended, and the plaintiff at the time was aware of the fact, he cannot recover as against such maker of the note. *Byles on Bills,* 128; *Stoddart vs. Kimball,* 6 *Cush.,* 469; *Small vs. Smith,* 1 *Denio,* 583. But if the defendant seek to impeach the plaintiff's title by alleging notice of the fraud or breach of duty by the payees, it is for him to prove it; as the transfer of a negotiable instrument before its maturity raises the presumption of the want of notice of any defence to it; and this presumption prevails until overcome by proof. *Carpenter vs. Longan,* 16 *Wall.,* 271.

In this case, in order to make the defence effectual, on the ground of the want of authority in the payees to pledge the note for past discounts, there should have been such proof as would have justified the conclusion that the plaintiff, through its agents or officers, had actual knowledge of the limited purpose for which the note was made, and, consequently, of the excess of authority by the payees in applying it to a different purpose. Nothing less than proof of knowledge of such facts would meet the require-

ment of the defence. The plaintiff was not bound to make inquiry, and mere negligence, however gross, not amounting to wilful and fraudulent blindness, while it may be evidence of *mala fides*, is not the same thing. *Goodman vs. Harvey*, 4 *Ad. & Ell.*, 870; *Ulher vs. Rich*, 10 *Ad. & Ell.*, 784; *Com. & Farmers' National Bank vs. First National Bank*, 30 *Md.*, 11, 26. The question whether the plaintiff had such knowledge or not, was one of fact for the jury. *Goodman vs. Simonds*, 20 *How.*, 366. But, upon a careful examination of the record, we think the Court below entirely correct in instructing the jury, as was done by granting the plaintiff's second prayer, that there was no evidence before them, legally sufficient, from which they could find that the plaintiff had such knowledge or notice of the excess of authority by the payees of the note. And although the question was, by the plaintiff's third prayer, submitted to the finding of the jury, yet that is an error of which the defendant cannot complain.

With the views entertained and which we have expressed in regard to the two main questions involved, we are of opinion that there was no error committed by the Court below in granting the three prayers offered by the plaintiff. Those prayers were founded upon the theory that the plaintiff was holder of the note for sufficient consideration, and as such entitled to protection against the defence of the want of authority in the payees to pledge the note as collateral security for a pre-existing indebtedness as well as for debts contracted on the faith of it; and that, in order to affect the plaintiff's title to the note, it, was necessary to bring home to it, at the time the note was taken, knowledge that the note was being used by the payees for a purpose different from that for which it was obtained from the defendant. This, we think, upon the facts enumerated in the prayers, was a fair and proper presentation of the case to the jury.

It has been objected to those prayers that they should not have been granted, because some of the propositions of

fact contained in them were not supported by the evidence. But we think the objection should not prevail. The defects pointed at by the objection amount to nothing more than discrepancies between the evidence of the witnesses and the facts stated in the prayers, in regard to immaterial matters, and therefore could form no sufficient ground for reversal.

As to the three first prayers of the defendant, they presented propositions nearly, if not entirely, the converse of those presented by the prayers of the plaintiff, which were granted. And as we have said that the plaintiff's prayers were, in principle correct, it follows that the three prayers of the defendant were properly refused by the Court below.

· 3. The only remaining question to be considered, is that in regard to the *onus* of proof, as to what debts and the amount thereof, for which the plaintiff is entitled to recover. This question is presented by the fourth prayer of the defendant.

It must be recollected that this action is brought, not for the recovery of the face of the note unconditionally and in all events, without reference to the debts intended to be secured by it, but for the recovery only of the amount due on the debts for which the note was taken as collateral security. This is all that the plaintiff, in its prayers for instruction to the jury, claimed to recover. And, indeed, that is all that it is entitled to recover, it being conceded that the note was taken as collateral security merely. In such case, while the plaintiff is entitled to be treated as a holder for value, it is only so to the extent necessary to protect the debts intended to be secured. *Stoddard vs. Kimball*, 4 *Cush.*, 604; 6 *Id.*, 469; *Roche vs. Ladd*, 1 *Allen*, 436; *Williams vs. Chaney*, 3 *Gray*, 215; *Mayo vs. Moore*, 28 *Ill.*, 428; *Gillen vs. Hubber*, 4 *Green*, 155; *Grant vs. Kidwell*, 30 *Mo.*, 455; *Tarbell vs. Sturtevant*, 26 *Vt.*, 513; *Williams vs. Smith*, 2 *Hill*, 301.

Such being the case, it was clearly incumbent upon the plaintiff to show what debts were embraced by the security, and the amount due thereon. This was the measure of the plaintiff's right of recovery, and, as in all other cases, it was, the right of the defendant to insist that the plaintiff should establish the existence and extent of its claim. There was no presumption the one way or the other as to the state of the account between the plaintiff and the payees in the note. What amount of drafts was discounted before, or what amount after, the receipt of the note by the plaintiff, was fixed by no presumption. And as the plaintiff did not sue for or claim the face of the note unconditionally, but as collateral security merely, the jury could have had no criterion by which to ascertain the amount of their verdict, independent of proof as to what was due on the debts intended to be secured by the note. The *onus* of this proof was clearly on the plaintiff. *In re Boys, L. R.,* 10 *Eq.,* 467. The presumption in support of the plaintiff's title to the note is a matter quite distinct from the question of the extent of its right of recovery thereon, in a case like the present. The fourth prayer of the defendant, as we read it, was a concession of the plaintiff's right to recover on the note, as well in respect to pre-existing as to contemporaneous or subsequent debts, for which the note may have been taken as collateral security; but it called upon the Court to instruct the jury, that if they found that the note had been furnished the payees to be pledged to the plaintiff as security for certain debts, but not pre-existing debts and the plaintiff sought to recover in respect to any pre-existing debt, the *onus* of proof was upon it to show that such debt was contemplated and intended to be secured by the indorsement of the note. This the plaintiff was bound to do, to entitle it to recover any amount claimed to be due on a pre-existing debt. The plaintiff was bound to show what debts were intended to be secured by the note, and the amounts

remaining due in respect thereof. We think, therefore, that the fourth prayer of the defendant should have been granted, as by its refusal some disadvantage may have been suffered.

Being of opinion that there was error in the ruling of the Court below in the first exception, and in its rejection of the defendant's fourth prayer, we must reverse the judgment, and award a new trial.

*Judgment reversed, and*
*new trial awarded.*

(Decided 25th June, 1874.)