Hopps & Co. *vs.* Savage.

---

WILLIAM HOPPS, trading as WILLIAM HOPPS & Co. *vs.* DUFFIELD SAVAGE.

*Negotiable instruments—Acceptance of Draft before being Signed by Drawer.*

The acceptor of a draft made payable to the order of the drawer, wrote the draft himself and accepted it without the signature of the drawer, and delivered it to W. the intended drawer, for the purpose of enabling him to raise money upon it After its date but before its maturity, W. indorsed it to S. and received from the latter its full face value, but did not sign it as drawer until after it had been negotiated. In an action upon the draft brought by S. against the acceptor, it was HELD :

That it made no difference whether the drawer's name was signed before or after the maturity of the draft, and the plaintiff being a *bona fide* holder for value before maturity, was entitled to recover.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the following prayer:

If the jury shall believe from the evidence that the defendant wrote the draft sued on in this case and accepted the same, and that said draft was then com-

33                          v. 69.

plete with the exception of the signature of Waddy
as drawer, and that the defendant delivered said draft
to Waddy to be. used to raise the money thereon, or
to be otherwise negotiated for the purposes of the busi-
ness which they then had in hand, and that Waddy en-
dorsed the draft over to the plaintiff for its full face
value before its maturity, and that the plaintiff took it
without notice of any failure of consideration, (if the
jury shall find such failure of consideration,) and that
Waddy subsequently signed said draft as drawer, then
the plaintiff is entitled to recover in this action the
amount of the draft with interest from the date of its
maturity.

And the defendant offered the two following prayers:

1. If the jury find that. the draft in question was
accepted by Hopps in blank, and given to Waddy to
enable the latter to pay the balance due on a bay horse
to one Powell, so that said horse might be sold by said
Waddy, and that the draft was not given for any in-
debtedness of said Hopps to said Waddy, and that said
bay horse was not sold by said Waddy, but was returned
by him to said Powell, and the indebtedness on said
horse thereby cancelled, and that a subsequent settle-
ment was had between said Waddy and Hopps, in
which said Hopps was not allowed credit for said draft,
then there was no sufficient consideration for said
draft to hold the defendant liable if the draft was still
in the hands of said Waddy; and if the jury shall
further find that at the time the draft was transferred
by Waddy to Savage, the same had not been signed
by said Waddy, and. that before it was signed by him,
said Savage was informed by Hopps that there was no
consideration for said draft, and that it was not worth
the paper on which it was written, then the plaintiff
is not entitled to recover on said draft.

2. If the jury find that Waddy did not sign the draft
in question until after its maturity, and that before it

was so signed Hopps told Savage, (the plaintiff,) that said draft was not worth the paper on which it was written, and was given without consideration, and that he would not pay it, then the plaintiff was not a *bona fide* holder for value of the draft before maturity.

The Court (BROWN, C. J.,) granted the plaintiff's prayer, and rejected the prayers of the defendant. The defendant excepted and the verdict and judgment being rendered against him he appealed.

The cause was argued before MILLER, IRVING, BRYAN, and McSHERRY, J., for the appellee, and submitted for the appellant.

*Wm. A. Hammond,* for the appellant.

Without the drawer's signature a bill, payable "to my order," though accepted, is of no force, either as a bill of exchange or as a promissory note. 1 *Wait's Actions & Defences,* 555, *and cases quoted ; Stoessiger vs. South Eastern Ry. Co.,* 3 *El. & Bl.,* 553; *Goldsmid vs. Hampton,* 5 *C. B.* (*N. S.,*) 94 ; *McCall vs. Taylor,* 19 *C. B.* (*N. S.,*) 301; *Tevis vs. Young,* 1 *Met.,* (*Ky.,*) 197.

*John T. Mason, R.,* for the appellee.

Where a party to a negotiable instrument intrusts it to another with blanks not filled, implied authority rests in the holder to fill up those blanks and perfect the instrument ; and this is so, even where it is a mere blank with nothing but the name of the party on it. *Russel vs. Langstaffe,* 2 *Doug.,* 514 ; 1 *Daniel on Negotiable Instruments,* secs. 92, 142, 843, 844.

Not only is the person to whom the blank note or incomplete instrument is given, authorized to fill up or complete it, but any holder, *bona fide* and for value, is fully protected, although he knew at the time he took the instrument that it had been accepted or endorsed

Hopps & Co. *vs.* Savage.

in blank, unless he was also cognizant that it had been fraudulently filled up. 1 *Dan. on Neg. Inst.*, secs. 843, 844; *Frank vs. Lilienfield*, 33 *Gratt.*, 382, 390; *Tevis vs. Young*, 1 *Met.*, (*Ky.*,) 200, 203-5-7-8-13; *Scard vs. Jackson*, 34 *L. T.*, (*N. S.*,) 65; *Harvey vs. Cane*, 34 *L. T.*, (*N. S.*,) 64, 66; *Schultz vs. Astley*, 2 *Bing.*, *N. C.*, 552, 544; *Byles on Bills*, 256.

Nothing short of fraud will defeat the title of a holder for value, in the course of trade and before maturity. *Frank vs. Lilienfield*, 33 *Gratt.*, 389, 390; *Williams vs. Huntington*, 68 *Md.*, 590.

In this case there was no fraud of any kind in point of fact, and of course the plaintiff could have notice of none when none existed.

It has been held in Maryland that it is no defence to an action by an endorsee for value against the maker of an accommodation note, who has received no consideration, that at the time he took the note he knew it was such accommodation paper. *Maitland vs. Citizens' Natl. Bank of Balto.*, 40 *Md.*, 561, 562, 568.

MILLER, J., delivered the opinion of the Court.

This suit was brought by Savage as endorsee, against William Hopps trading as "Wm. Hopps & Co.," as acceptor of a draft or bill of exchange. The declaration also contains the common money counts. The case was tried before a jury on issue joined to the plea of *non assumpsit*, and the verdict and judgment were in favor of the plaintiff. The draft as it appeared when offered in evidence at the trial and when it was sued on, is as follows:

"Accomac C. H., Va., October 22nd, '87.

"Thirty days after date pay to order of myself one hundred and fifty dollars ($150.00) and charge same to my ac."

"FRED WADDY."

It was addressed to "Wm. Hopps, 210 Spear's Wharf, Baltimore," and written across its face was "Accepted. Wm. Hopps & Co.," and it was endorsed "Pay the within order to D. Savage." "Fred Waddy."

At the trial the defendant by himself as a witness, offered evidence tending to show that *he wrote* the draft himself, and accepted it *without Waddy's name being signed to it,* and gave it to Waddy to *be used* in payment of a debt of $150 balance due on a bay horse for which Waddy had traded a mare belonging to witness, so that Waddy might take the horse to Richmond and sell him; that he owed Waddy nothing at the date of the draft and received no other compensation for it; that Waddy did not pay the debt of $150 and did not sell the horse, but re-exchanged him for the mare, and thus cancelled the debt; that Savage showed witness the draft a day or two after it was due, as witness thinks, although it may have been a day or two before, and witness then told him it was without consideration, was not worth the paper on which it was written and that he would not pay it; that Waddy had *not then signed the draft on its face,* and witness called the attention of Savage to that fact. On cross-examination witness stated that Waddy asked him for money to go to Richmond, and he replied he had no money, but would give him an *accepted draft;* that Waddy wanted $100 but witness said no, I will give you a draft for $150 to close up the transaction; witness also stated that he expected Waddy *would raise money on the draft by selling it, or otherwise.*

The plaintiff in rebuttal offered evidence tending to show that Hopps and Waddy owned some horses together, and that Hopps was indebted to Waddy for his share of the receipts from the horses, and that Hopps accepted the draft and gave it to Waddy on account of this indebtedness; that Waddy *endorsed the draft to the*

*plaintiff on the 25th of October*, 1887, in consideration of $45, borrowed money, $55 in cash, and $50 which plaintiff agreed to pay and did pay a few days afterwards to one Davis, on account of Waddy; that plaintiff did not know that the draft required Waddy's signature to it until Hopps called his attention to it a few days before it was due, and he then took it and had Waddy sign it, as he thinks, a day or two before it was due.

This statement contains all the evidence in the case. The material facts are undisputed. Hopps wrote the draft himself, *accepted it*, and then gave it to Waddy for the express purpose of enabling him to raise money upon it. It is true it was delivered to him before Waddy had signed it as drawer, but there can be no doubt as to the fact that Hopps intended Waddy should sign and negotiate it. In such case the law implies an authority from Hopps to Waddy to sign his name as drawer. Four days after its date, and long before its maturity, Waddy endorsed the draft to Savage, and received from the latter its full face value. That Savage thereby became a *bona fide* holder for value is undeniable. Even if he had then known that, as between Hopps and Waddy, it was without consideration and merely an accommodation bill, his position as such holder would not have been affected by such knowledge. *Maitland vs. Citizens' National Bank of Balto.*, 40 *Md.*, 540.

It is also true that Waddy's signature was not put to the draft until after Savage had become the holder. In other words, the draft, when endorsed to Savage, was in blank in respect to the drawer's name, but this blank was afterwards filled up in accordance with the intention of the parties when the bill was written and accepted. We are clearly of opinion the law authorized this to be done. In fact the authorities go to the extent of holding that Savage would have been author-

ized to fill the blank by inserting his *own name* as drawer. Such was the decision of the Common Pleas Division in *Harvey vs. Cane,* 34 *Law Times, N. S.,* 64; and in *Scard and Wife vs. Jackson,* reported in a note to the same case, it was held that the name of the holder could be thus inserted after the maturity of the bill. See also *Schultz vs. Astley,* 2 *Bing., N. C.,* 544. In the case before us the suit is by a *bona fide* holder for value before maturity, against the *acceptor,* and the drawer's name was signed in strict accordance with the intention of the parties. We hold that in such a case it makes no difference whether the blank was filled before or after the maturity of the draft.

From these views it follows there was no error of which the appellant is entitled to complain in the rulings of the Court upon the instructions, and the judgment must be affirmed.

*Judgment affirmed.*

