# THE BALTIMORE CITY PASSENGER RAILWAY COMPANY *vs.* JOHN KNEE.

### *Evidence—Impeaching and Corroborating Witnesses.*

Where the credibility of a witness is impeached by evidence showing that he testified under corrupt motives or has fabricated testimony to meet the exigencies of the case, he may be corroborated by evidence that shortly after the transaction and before the motive to fabricate existed, he made the same statement of facts as that given in his testimony.

But where a witness has testified as to the details of an accident by which a party was injured and is subsequently impeached by evidence showing that he was not present when the accident occurred, it is not competent to corroborate him by evidence that shortly after the accident he had said that he had seen a man injured, since such general statement is not a prior declaration of the same facts testified to.

Where a witness testified that shortly after the accident, the party injured told him how it occurred, it is competent to impeach his credibility by evidence that previously, when asked if the injured person had said anything to him about the particulars of the accident, the witness had replied in the negative.

If in the previous statement of the witness he had denied hearing from the person injured the *particulars* of the accident, he may be impeached by evidence that he had denied hearing the *details* of the accident, since the two words are synonymous.

Appeal from the Superior Court of Baltimore City (RITCHIE, J.) The case is stated in the opinion of the Court. The jury below returned a verdict for the plaintiff for $800.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*Arthur W. Machen* for the appellant.

*E. Swinney* and *S. S. Field* for the appellee.

PAGE, J., delivered the opinion of the Court.

The *narr.* alleges that John Knee was a passenger on one of the defendant's cars ; that near the intersection of Chase and Gay streets the car was stopped on a signal from the conductor, and that Knee, intending to leave it, " arose from his seat and moved toward the usual place of exit, * * but before he could reach the highway * * the car was suddenly started forward, whereby * * he was thrown to the ground " and injured. At the trial the plaintiff (having himself given an account of the accident), in support of these allegations, called as a witness on his behalf, one Lewis Winters, who testified that he was about eight or ten feet from the car when Knee was hurt; that he saw the car stop and a couple of women get off, then a couple of gentlemen, and that one of these made a step, and as he did so the car " made a jolt " and he fell ; that he caught by the car and was dragged, and that when he came to the sidewalk witness saw his hand was bleeding. The defendant, to rebut this statement, offered several witnesses ; two of whom swore positively that Winters was not present at the scene of the accident. To corroborate Winters, the plaintiff called Robert O'Kane and offered to prove by him that Winters, two or three days after the accident, told witness " about having seen the accident; he (Winters) said he saw a man hurt at the corner of Broadway and Chase ; he did not say who the man was ; he did not mention any name ; he just told me he had seen the man fall and get hurt ; he didn't tell me any of the details." The counsel for the defendant objected to the admission of this evidence, but the Court permitted it to go to the jury. This constitutes the first exception.

Ever since the case of *King* v. *Parker*, 3 Doug. 242, it is well settled, according to the weight of authority, that " what a witness said not upon oath, will not be admitted to confirm what he said upon oath." *Robb* v. *Hackley*, 23 Wend. 55 ; *Conrad* v. *Griffey*, 11 Howard, 490. But, though this is the general rule, the text-writers agree that

most Courts have held that there " may be many cases
where, under special circumstances, it possibly might be ad-
missible ; as, for instance, in contradiction of evidence tend-
ing to show that the account was a fabrication of a late date,
and where, consequently, it becomes material to show that
the same account had been given before its ultimate effect
and operation, arising from a change of circumstances,
could have been foreseen." 2 *Starkie on Ev.*, marginal
page, 187 ; 1 *Wharton on Ev.*, sec. 570 ; *Rapalje's Law of
Witnesses*, sec. 224 ; *Taylor's Ev.*, sec. 1330. This exception
to the general rule seems to rest upon the theory that the
witness, having been impeached by evidence showing that
he has testified under corrupt motives, or has fabricated his
testimony to meet the exigencies of the case, the fact that
he uttered the same statement, shortly after the transaction,
and before the motive to fabricate existed, tends to support
not only his integrity, but also the accuracy of his recollec-
tion. To bring a case within this exception it must appear
that the conversation occurred soon after the transaction, is
consistent with the statements made on oath, and contains
such fact or facts pertinent to the issues involved, as reason-
ably furnish to the jury some test of the witnesses' integrity
and accuracy of recollection. And this is the rule that ob-
tains in Maryland. In the case of *Maitland* v. *The Citi-
zens' Bank*, 40 Md. 540, the rule and its application is
stated as follows : " The evidence admitted under it is not
admitted to prove or disprove any fact involved in the issue
on trial, but simply to corroborate or support the credibility
of the witnesses; * * to show that the witness has been
consistent in giving the same narrative of fact ; that his
former statements, when without interest or motive to falsify
the truth, consist with his sworn testimony given on trial ;
and thus to some extent remove suspicion that his testimony
has been fabricated to meet the emergencies of the case, or
that his recollection has varied, and is therefore not to be
relied on. * * The former unsworn statements, as com-
pared with his testimony on trial, should furnish some test

of the witness's recollections, as well as of his integrity."
This is the extent of the rule here, whatever it may be else-
where. It is an exception to the general rule, and must
"not be extended, but applied strictly." (*Ibid*) 559;
*Washington F. Ins. Co.* v. *Davison*, 30 Md. 104; *McAleer*
v. *Horsey*, 35 Md. 464.

Now what is this case? The witness, Winters, had sworn
that he was present at the happening of the accident, and
gave a narrative of all the facts as he saw them. The de-
fendant produced witnesses who swore he was not present.
This went to a substantial impeachment of Winters. 30
Md. 104. To sustain him the plaintiff offered to prove
that two days after the accident Winters told O'Kane that
he was present and saw a man hurt at the corner of Broad-
way and Chase streets, but told him nothing more. Noth-
ing was said about the details of the accident. The issue
in this case was, how was the plaintiff injured? The fact
of Winters' presence was in itself quite immaterial, and if
it was not, it could not have been proved or disproved by
hearsay. His credibility would undoubtedly suffer if the
jury could be made believe he was absent. And it is be-
cause of this that it became competent for the plaintiff to
rebut the evidence of the defendant's witnesses that he was
not there. But Winters' unsworn declarations were not ad-
missible for the purpose, and it is not so contended. Nor
does the declaration made to O'Kane—that he, Winters,
was present and saw a man hurt—have any tendency to
confirm the statement as to the manner in which the plain-
tiff was hurt. It is difficult to perceive how a declaration
like this can prove, or tend to prove, that the narrative of
facts made in his sworn statement is not a fabrication, made
to meet the emergencies of the case, or that his recollection
has not varied. And while it is clear that if his absence from
the scene of the transaction were established to the satisfac-
tion of the jury, it would utterly destroy the witness's credi-
bility, we cannot perceive how the fact of his having said,
two days later, that he was present and saw a man hurt,

furnishes even the slightest test that his narrative of how the man was hurt, was made by him either honestly or correctly ; or that such an unsworn declaration, when compared with his testimony, supplied " a test of the witness's recollection as well as of his integrity." The rule is not to be extended, but is to be strictly applied, and only such testimony of this kind as will measure up to these requirements is admissible.

We have been furnished with no case in Maryland, or indeed elsewhere, in which it was held that when the impeachment of a witness (who has given in his testimony a narrative of facts) consists of evidence to the effect merely that he was not present at the transaction about which he has testified, a former unsworn declaration that he was present and saw it, is admissible under the rule invoked in this case by the plaintiff's counsel. In *Curtis* v. *Cook*, 6 H. & J. 93, the unsworn statement contained the same facts testified to on trial. In *Washington Fire Ins. Co.* v. *Davison*, *supra*, Davison had testified he was present when the agents of the Insurance Companies examined the premises and pointed out to them the plan of the building about to be erected. McGinnis and Milnor swore that Davison was not present. The plaintiffs then proved that on that occasion McGinnis did a certain act and made a certain remark in regard to the building, which remark he had not communicated to Davison. Davison was then recalled and swore to the occurrence and the remark. The Court then permitted a witness to testify that the next morning Davison mentioned the occurrence and the remark made to McGinnis. It needs no comment to point out how, under these circumstances, the unsworn statement corroborated the testimony he had given. It furnished both a test of his recollection and of his integrity. *Bloomer* v. *The State*, 48 Md. 521 ; *Mallonce* v. *Duff*, 72 Md. 286. We are of opinion, therefore, there was error in the ruling contained in the first exception.

During the progress of the trial Sergeant Zahner, a wit-

ness for the defendant, testified that after the accident the appellee told him he fell off the car while it was in motion, and that he (Knee) did not know if it was the fault of the gripman.   On cross-examination, Mr. Field asked him the following question : " Didn't I ask you (the other day in Court) whether he (the plaintiff) said anything about the *particulars* of the case to you, and you answered me, he did not ?" to which the witness replied : " No, sir ; I don't remember saying anything about that at all." ,Subsequently Mr. Field tendered himself as a witness and offered to prove that at the time and plaee mentioned he asked the Sergeant : "Did Mr. Knee tell you anything about the details of the accident, how it happened," and the Sergeant replied : " He did not."   The Court having admitted the evidence, the defendant excepted.   This evidence, we think, was properly admitted.   Zahner had testified to declarations of the plaintiff inconsistent with the claims he was setting up.   The plaintiff was at liberty to rebut his testimony by evidence showing it to be untrue, or by impeaching the witness.   With the view of pursuing the latter course, Zahner was asked as to a conversation with Mr. Field, and he stated that Knee had not told him the *" particulars "* of the accident ; that is, never told him any of the items of the affair. Mr. Field testified the question asked of the Sergeant was, Did Mr. Knee tell you anything about the *" details,"* &c., to which he replied in the negative.   The objection of the defendant counsel is that the witness had stated Knee had not told him " the *particulars,"* and that it was not an impeachment to show that he said, Knee had not told him the *" details,"* &c., or, in other words, a statement that one has not heard the particulars, is not contradicted by show- ing that he had heard the " details."   The words are, in fact, synonymous, and in ordinary parlance convey the same meaning.

*·Judgment reversed and new trial awarded.*

(Decided March 26th, 1896).