# THE BALTIMORE CITY PASSENGER RY. CO. *vs.* DANIEL J. COONEY, By His Next Friend, Etc.

*Negligence—Injury by Street Railway—Avoidance of Accident After Knowledge of Plaintiff's Peril—Contributory Negligence—Evidence—Instructions to the Jury—Corroborating Witness.*

In an action against an electric street railway company the evidence on the part of the plaintiff, a boy eleven years of age, was that he was standing with other boys in the middle of a street looking at a workman, with his back turned towards defendant's car, which approached the crossing at a high rate of speed without sounding the gong or giving any warning; that plaintiff ran without seeing the car when he saw the other boys running, but stumbled and fell, and the car passed over one of his legs; that there was an unobstructed view along the track. · *Held,*

1st. That although the plaintiff was guilty of negligence in standing on the track with his back towards approaching cars and without looking, yet if defendant's motorman could have avoided the accident by the exercise of due care after he saw or ought to have seen plaintiff's peril, then the plaintiff's negligence is not a bar to recovery in this action.

2nd. That a prayer instructing the jury that there was no legally sufficient evidence of negligence on the part of the defendant to warrant a verdict was properly rejected.

A prayer offered by the defendant instructed the jury that even if they found that the plaintiff just before the accident was standing in the street with other boys and that when they ran he also started to run and fell, and in consequence was run over by the car, and should also find that the plaintiff when so standing was at the side of the track and not in the way of the car, then the verdict should be for the defendant. *Held,* that this prayer should have been granted because if the plaintiff was not on the track when the car approached but stumbled and fell on the same too late for the motorman to see him or to avoid running over him, the defendant is not liable.

When the jury were instructed that they were not at liberty to find that the accident was caused by the failure of the defendant to supply the car which ran over plaintiff with a fender, it is not reversible error for the trial Court to refuse to strike out the testimony of a witness that there was no fender on the car.

In this case the evidence on the part of the defendant was that the plaintiff was running along the side of the car and attempted to ride by holding on to a projecting ledge and resting his feet on the truck

and that while in this position he slipped and fell under the wheels. *Held,*

1st. That a witness who had testified to these facts could be asked to say whether the plaintiff, when he fell was in a position where the motorman could see him.

2nd. That defendant's master mechanic may testify as to whether a boy could ride on the car in question in this manner.

3rd. That evidence that boys had been seen stealing rides in this way on other cars of similar construction was not admissible.

*Semble,* that when the testimony of a witness has been impeached, he cannot be corroborated by his own evidence to the effect that he had given the same account of the transaction before the trial to certain persons.

Appeal from a judgment of the Court of Common Pleas (HARLAN, C. J.)  The question referred to in the fourth bill of exceptions was as follows : "State whether or not you have ever seen boys stealing rides on electric cars similar in construction to this car, No. 412, of the Green Line, by riding on the truck bars and holding on the wooden leg at the side of the car?"  To this question the plaintiff objected and the Court sustained the objection, and refused to permit the said question to be asked or answered.

The question in the fifth bill of exceptions was : "State whether or not you have sufficient familiarity with the construction of cars similar to 412 of the Green Line, constructed as that car was in May, 1894, to be able to tell whether it was practicable for boys to steal rides, by riding on the edge of the truck of the car, or on the truck bar at any place between the east end of the box and the west end of the box?" To this question ·the plaintiff objected and the Court sustained the objection.

*Plaintiff's 1st Prayer.*—That if the jury find from the evidence in this case that, on or about the 21st day of May, 1894, the plaintiff, while being on Bank street, was struck by a car of the defendant, then and there under the charge and control of the servant or servants of the defendant, and was run over and injured as alleged in the declaration, and further find that the injury to the plaintiff was caused by

want of ordinary care and prudence on the part of the servant or servants of said defendant, and not by the want of ordinary care or caution on the part of the plaintiff directly contributing to the injury, as such care and caution on plaintiff's part is defined and explained in plaintiff's second prayer, that then the plaintiff is entitled to recover in this action.   (Granted).

*Plaintiff's 2nd Prayer.*—That the degree of ordinary care and caution required of the said plaintiff, as stated in the plaintiff's first prayer, was such ordinary care and caution as ought, under the circumstances of this case, to be reasonably expected from one of the plaintiff's age and intelligence, as testified to by the witnesses.   (Granted).

*Plaintiff's 3rd Prayer.*—That even if the jury should find that there was want of ordinary care and caution on the part of the plaintiff, considering his age and intelligence, as mentioned in the plaintiff's first and second prayers, and testified to by the witnesses, yet the plaintiff is entitled to recover; provided the jury find the other facts set out in the first and second prayers of the plaintiff, and further find from the evidence that the servant or servants of the defendant could have avoided the injury complained of by the exercise of ordinary care and caution after such servant or servants of the defendant saw that the plaintiff was in danger of being struck by the car of defendant, or might by ordinary care and prudence have seen that the plaintiff was in such position of danger.   (Granted).

The jury returned a verdict for the plaintiff for $3,000.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (Jan. 25, 1898).

*Arthur W. Machen* and *William S. Bryan, Jr.*, for the appellant.

*A. Leo Knott* and *J. Stonewall J. Healy*, for the appellee.

BOYD, J., delivered the opinion of the Court.

This case is not unlike most suits for personal injuries, based on the alleged negligence of the defendants, in one respect at least—that there is a great conflict between the witnesses as to the particulars of the accident. It is not remarkable that persons present at an accident which results so seriously as that in this case, should differ in their narrative of the details, but it is difficult to understand how they can vary as much as they do in this case. Seven apparently disinterested witnesses testified that the plaintiff was running along the side of the car that ran over him, and that he was attempting to ride on it by holding on to a ledge that projected from the side of the car and resting his feet on the truck or some part of the running gear. Yet the plaintiff denied that and swore he was standing in the centre of the track with some other boys with his back towards the east, the direction the car was coming from ; that he " saw the boys make a break towards the north ;" that he did not know what they were doing, but he tried to follow them, as he supposed he was in some danger, but stumbled and fell. One witness sustained him in most of his evidence and another in some particulars. At the conclusion of the plaintiff's evidence the defendant offered a prayer that there was no legally sufficient evidence of negligence on the part of the defendant to entitle the plaintiff to recover and also another that the plaintiff's negligence, as appeared from his testimony, had directly contributed to cause the injury and the verdict must be for the defendant.

In passing on those prayers we are of course required to accept as true the evidence offered by the plaintiff, however much we might differ with the jury as to what would have been a proper verdict. If the weight of testimony in favor of the losing side be so decided as to satisfy the trial Court that the jury acted from passion, prejudice or some motive other than a desire to do full justice to the parties, then it is the duty of that Court, on proper application, to grant a new trial, and this Court cannot review its action, but when

there is evidence legally sufficient to sustain the verdict reached, if the evidence bearing on that side of the controversy be accepted as true, then the Court cannot refuse to submit the case to the consideration of the jury. We must, therefore, in passing on those two prayers, determine whether the evidence offered on behalf of the plaintiff precluded him from having his case submitted to the jury for the reasons assigned in them.

At the time of the accident the plaintiff was eleven years of age. He was returning home from school, which was held on the corner of Bank and Broadway streets, in the city of Baltimore. The defendant had two railway tracks on Bank street, on which the cars were propelled by electricity—the overhead trolley system having been adopted on that line a few weeks before the accident. There was a valve in connection with the city water-works in the middle of the east-bound track, near the centre of Spring street as it crosses Bank street, and an employee of the city was engaged in putting in an iron plate, to use his language, " to represent a water stop." A number of boys going from school were attracted by this work and were standing near the workman in or about the railway tracks. The plaintiff testified that he was going along the north side of Bank street, on the pavement, until he got near Spring street, when he saw some boys standing in the street on the north track; that he went out into the street and then thus described what occurred: " And they walked up a little ways and I caught up to them; and my face was towards the west; I saw them make a break towards the north; and I don't know what I did it for, but I just run with them and because I saw them running; and I fell on my hands and feet, and the car struck me and I saw it was going to cut me across my thighs so I scrambled out in some way and it caught my left leg below the knee." He said he had been standing there three or four minutes in the centre of the track with his back towards the way the car was coming; that he heard no bell or gong from the

car before he was struck. Miss Oberman, one of his wit-
nesses, after describing the position she was in and refer-
ring to the man at work and the boys standing between the
tracks looking at him, said, " Joseph Cooney came down
on the north side of Bank street and got into the track,
and as he was there the boys walked up to him; what they
were doing I don't know; and as they stood there I noticed
a car coming down at a very fast rate of speed; with that
I saw the boys make an attempt to run from the track,
which they did, except Joseph, and when he did I saw him
stumble, go down on his hands and feet, and the car went
over him." Thomas J. Booz, who was riding on the car
that injured the plaintiff, said that the motorman stopped at
Caroline street, where other tracks crossed those on Bank
street, and rang the gong there, but that he did not ring it
as he approached Spring street. The accident, according
to the testimony of the plaintiff's witnesses, happened about
where the easterly side of Spring street intersects Bank
street, and at a point about two hundred and twenty feet,
according to the plat in evidence, from the easterly side of
the tracks on Caroline street, where the car stopped.

The danger to those lawfully using the streets of cities
and towns by reason of the introduction of " rapid transit "
on the street railways is apparent to the casual observer,
and is forcibly brought to the attention of Courts by the
numerous cases that have been before them since the streets
have been thus used. As street railway companies have no
exclusive right to the use of so much of the bed of the street
as their tracks occupy, this Court has more than once had
occasion to point out the distinction between the rights and
duties of persons injured by accidents on street railways and
those persons injured whilst trespassing on the rights of way
of railroad companies owning their own tracks, and the duties
of the companies cannot be more distinctly announced than
was done in *Cooke* v. *Baltimore Traction Co.*, 80 Md. 551.
Assuming that the car that caused the injury to the plain-
tiff approached the crossing at Spring street at a very fast

speed, without the motorman sounding the gong or giving any alarm, whilst there was a number of boys on the track in full view of him, which facts the plaintiff offered evidence tending to prove, the prayer which sought to take the case from the jury on the ground that there was no legally sufficient evidence of negligence on the part of the defendant was necessarily rejected, as under the circumstances the question of negligence *vel non* was for the jury. Then, again, if it be true that the plaintiff was standing in the centre of the track, with his back towards the car, the question whether the motorman used due care to avoid the accident was also necessarily submitted to the jury.    The track was straight between Caroline and Spring streets, with an unobstructed view of it from one street to the other, and we know of no principle that would permit the Court to say that under such circumstances the motorman was not guilty of negligence, assuming, as we have said, the plaintiff's evidence to be true.    If he was thus standing on the track the motorman could not have failed to see him if he exercised even a much less degree of care than is required of him, and if he did see him in that position it was manifestly his duty to check the speed of his car or have it under control, but the evidence shows that the car was not stopped until it had gone some distance beyond Spring street.

If the plaintiff did stand with his back towards the direction from which the car approached on that track for three or four minutes as he says he did, he was clearly guilty of negligence.    He was eleven years of age, was at that time in the fourth grade of the grammar school he attended, lived near Bank street and went to school on it.    Without some evidence that he was deficient in his mental faculties, and there was none, a boy of his age and opportunities must be presumed to know that it was negligence on his part to thus place himself on the railroad track.    But, as we intimated above, that would not justify the motorman in running over him.    Although the plaintiff may be guilty of negligence, the defendant cannot thereby excuse itself if by the exercise

of due care its agent could have avoided the accident, after discovering the negligent party in his perilous position. The evidence of the plaintiff's witnesses was amply sufficient to authorize the Court to submit the question to the jury. The cases in this State are so numerous on that subject that we will only cite some of those in which street railways have been parties. *Arnreich's case,* 78 Md. 589; *McKewen's case,* 80 Md. 593; *Appell's case, ibid,* 603. This rule, which has been adopted as an exception to or modification of the general doctrine that a plaintiff who is guilty of contributory negligence cannot recover, is a very just one, as the law will not permit the loss of life, limb, or even property, to be deliberately and carelessly inflicted, when it could by reasonable care and caution be avoided, merely because the injured person was negligent, but the rule should not be extended too far, but should be kept within proper bounds. When it is clear that the plaintiff was guilty of negligence there must be evidence from which the jury can fairly and reasonably find the defendant liable for violation of duty after the plaintiff has thus negligently placed himself in danger, in order to avoid the legal effect of his own negligence. But in this case the evidence of the plaintiff shows that the motorman must either have seen him in the perilous position he occupied in time to warn him or stop the car, or must have failed to see him after he had gotten on the track, because he was not using such care as was required of him while thus rapidly moving through one of the public streets of the city. The second prayer offered at the close of the plaintiff's testimony was therefore properly rejected.

The tenth and eleventh prayers of the defendant were practically the same as those above referred to and it will not be necessary for us to discuss them, as what we have already said disposes of them. It is true the evidence of the defendant flatly contradicted that of the plaintiff, but that does not relieve us of the necessity of assuming the plaintiff's evidence to be true in passing on such prayers.

The only other prayer offered by the defendant which

was rejected by the Court is the eighth. In that ruling we think there was error. We have already referred at some length to the theory of the plaintiff in regard to the accident, and have also spoken of the testimony of a number of witnesses of defendant who swore that the boy was running along with and riding on the car. But under the evidence there was still another view the jury might have taken. They may have believed that the plaintiff was not running with or riding on the car and yet have found that he was not standing *on the track*. The prayer is " that even if the jury find that the plaintiff, just before the accident, was standing in the street with the other boys mentioned in the testimony, and that when the other boys ran he also started to run and fell, and in consequence thereof was run over by the car, and shall further find that the plaintiff, when so standing in the street, was *at the side of the track and not in the way of the car*, then the verdict should be for the defendant." Mr. Booz, one of the plaintiff's witnesses, who was riding in the car, said that just before he got to Spring street he saw a group of little boys *standing alongside of the track*. The motorman said he stopped at Caroline street to take on some passengers, and after crossing that street he saw a crowd of boys and somebody there that attracted them ; he started to ring his gong, running at a slow rate of speed, and when he was about half way between Caroline and Spring streets the man that was working there and the boys all passed to the north side of the street and the track was clear. At another place he said, " I am certain that the boys and the gentleman that was working on the track got out of the way of the car and passed from the north side of the street and cleared the track two or three feet." Mr. Berryman, a passenger on the car, said, " I was looking out of the window and saw a crowd of boys and a man digging in the street, they seemed to move to one side and he kept on going ; the track was clear and the car going very slowly ; the first I knew of the accident the people in the rear part of the car were talking about it." If, in point

of fact, the plaintiff when standing in the street " was at the side of the track and not in the way of the car," the motorman could not be required to have anticipated that the plaintiff would stumble and thereby get on the track. Before that prayer was offered the motorman, the man who was working in the street, four boys who were watching him, the conductor and a passenger had testified that the gong was sounded as the car approached Spring street. That testimony was contradicted by the plaintiff and one witness swearing they did not hear it ring, and another, who was a passenger, who said it did not ring. There was thus some conflict on that question, although the great preponderance was on the side of the defendant—eight persons swearing it was rung and only one swearing positively to the contrary. But if in point of fact the plaintiff was not on the track and not in the way of the car, there was no reason so far as he was concerned to sound the gong. If he intentionally got on the track just as the car reached that point, without first looking to see if a car was coming, he was guilty of contributory negligence, and if he got on by stumbling and falling on the track too late for the motorman to see him, or to prevent running over him, the defendant is not liable. We said above that the defendant might be liable if the testimony of the plaintiff is believed, because there was evidence tending to show that the accident could have been avoided by the use of proper care and caution, but if the track was clear as the car moved towards Spring street, the defendant would not be liable, if the plaintiff stumbled and fell on the track as the car was passing. The prayer should have been granted to meet that view of the case.

We do not see any reversible error in the ruling on the plaintiff's first and second prayers. They are very general and of the character that are sometimes misleading, but when taken in connection with the defendant's prayers that were granted the jury ought not to have been misled by them. It is true that there was no special evidence offered as to the intelligence of the plaintiff, but he was a witness

before the jury and they had an opportunity to judge of his intelligence from his testimony. What we have said about the duty of defendant's agent after the plaintiff got on the track, as testified to by him, sufficiently states our views on that question without discussing the plaintiff's third prayer. This disposes of the objections to the prayers urged before us.

The first exception was to the refusal of the Court to strike out the evidence of one of the witnesses that there was no fender on the car. The defendant's seventh prayer, which was granted, instructed the jury that they were not at liberty to find from the evidence that the accident in question was caused by any failure of duty on the part of the defendant in respect to providing a fender or guard. On cross-examination of Miss Oberman the defendant had endeavored to cast doubt on her account of the accident by asking her if there was not a fender that obstructed her view. The Court was therefore right in refusing to strike out all evidence on that subject, especially as it instructed the jury as to the effect of it.

We can see no valid reason why the question asked the witness Sody embraced in the third bill of exceptions should not have been allowed. He had testified that he saw the plaintiff running along the side of the car, with his hand on a bar on the side, and a book in his right hand; that he fell and went under the wheel. He was then asked whether the plaintiff was "in a position where the motorman could see him?" The object of that testimony is apparent—that the defendant hoped to show that the motorman could not see him in that position and hence that no negligence could be attributed to him for not stopping the car or taking some steps to prevent his falling. It was a pertinent question as to whether he was near the front, the centre or rear of the car, and if the witness could tell whether the motorman could see him in the position he was it was proper for the jury to know that fact. There was therefore error in not allowing that question to be answered.

The sixth exception was to the refusal of the Court to allow the defendant to ask the witness F. E. Tobe, who was master mechanic of defendant, whether a boy could "steal a ride" on the car that ran over the plaintiff by hanging on the ledge on the side of the car and putting his feet on the truck or bar between the truck and wheel guard. As we have said, the theory of the defendant was that the plaintiff was injured in that way, while the plaintiff not only claimed that he was not, but may have contended before the jury that he could not have held on to the car in that way, as indeed was argued in this Court. Manifestly then it was permissible for the defendant to show that a boy could so ride on the car and the witness who had been master mechanic of the defendant for six years and assistant master mechanic for eighteen years, and who had charge of the entire rolling stock of the company, would be as competent as any one could be to express an opinion on that subject. His knowledge of the construction of the car would enable him to speak intelligently and positively and he should therefore have been permitted to answer that question. The questions contained in the fourth and fifth bills of exception propounded to that witness with reference to other cars of the company were properly ruled out, as it was as to this particular car, and not others, that the question was relevant. The refusal to allow the introduction of a photograph of another car in *Green's case*, 56 Md. 84, is a very similar ruling. The action of the Court on the offer to prove by William Dickell what he said to people on the car about the accident, as embraced in the seventh exception, would seem to require no consideration by us, as two witnesses were afterwards permitted to state what he did say. That character of evidence for the purpose of corroborating a witness who has been impeached was considered in *City Pass. Ry. Co.* v. *Knee*, 83 Md. 77, where the authorities are reviewed, but the cases in this State do not go to the extent of holding that the impeached witness can himself testify to what he said on other occasions in order to corroborate

his testimony given at the trial. But as indicated above we are not called upon to pass upon that question.

For error in rejecting the defendant's eighth prayer and refusing to admit the testimony proffered, as stated in the third and sixth bills of exception, the judgment must be reversed.

*Judgment reversed with costs and new trial awarded.*

(Decided March 3rd, 1898).