RICHARD D. BARRY, Administrator of the Estate of Richard T. Barry, Deceased, Appellant, v. BURLINGTON RAILWAY & LIGHT COMPANY.

Personal Injury: STREET RAILWAY: CONTRIBUTORY NEGLIGENCE: EXER-
1    CISE OF CARE.    There is a distinction between the liability of a steam railway company and a street railway company in the operation of cars where an injury occurs involving the question of contributory negligence.    In the former case, care is required when the danger becomes atcually known, while in the latter, the exercise of care is a primary obligation.

Same; QUESTION FOR JURY: EVIDENCE.    Evidence in the case consid-
2    ered and held, that the question of the exercise of reasonable care on the part of the motorman to avoid the injury, notwithstanding the evident contributory negligence of deceased, should have been submitted to the jury.

*Appeal from Des Moines District Court.*—HON. W. S. WITHROW, Judge.

WEDNESDAY, JANUARY 21, 1903.

ACTION by an administrator to recover damages for the death of his decedent, a boy of about sixteen years of age, alleged to have been caused by the negligence of servants of defendant operating an electric street railway car, whereby the said car, being operated on the tracks of the defendant, was run against and over the deceased, causing his death.    At the close of the evidence for plaintiff,

defendant's motion to direct a verdict in its favor was sustained, and judgment was thereupon rendered for defendant, from which plaintiff appeals.—*Reversed.*

*J. M. Mercer* and *S. L. Glasgow* for appellant.

*Stutsman & Stutsman* and *Wal h Bros.* for appellee.

McCLAIN, J.—The evidence for plaintiff tended to show that the deceased attempted to cross defendant's street car track on one of the public streets of the city of Burlington in front of one of defendant's electric cars, moving at the rate of about six miles an hour; that there was nothing to prevent deceased from seeing the approaching car, had he taken any precaution for his own safety; that he was struck by the car while on the track; that he threw up one arm, and with it caught the front part or dashboard of the car, and was carried some distance (p erhaps twenty feet), when the car passed over him; and that the car might have been stopped in from five to twelve feet. The testimony of witnesses as to the distance from where the car struck deceased to the point where the body was found is conflicting, but it is sufficient to say that the evidence tends to show the deceased to have been struck a few feet west of a certain street crossing (the car going west), and that his body was found some twenty or twenty-five feet west of the crossing, after having been run over by the car.

The contention for appellant is that it should have been left to the jury to determine whether, in the exercise of reasonable care on the part of the motorman, the danger to deceased could have been discovered in time to stop the car before the deceased was run over, while for appellee the contention is that there is no evidence that the motorman knew of the danger of deceased in time to have stopped the car before the fatal injury was inflicted.

It is we l settled in this state, and by the weight of authority generally, that where one is injured by being

run over by a railroad train, and his own negligence has
contributed to bring about the injury, the
railroad company is liable only in case its em-
ployes,. after becoming aware of the danger,
have been negligent in not using reasonable care to avoid
the injury. *Keefe v. Railway Co.*, 92 Iowa, 186, and
cases cited; *Orr v. Railway Co.*, 94 Iowa, 423; *Kelley v.
Railroad Co.* 118 Iowa, 387. But those cases, so far as they
hold that the duty to exercise care to avoid injury to one
who is guilty of contributory negligence in putting himself
in danger arises only when the danger becomes actually
known to the employes of the railroad company, do not
relate to circumstances involving a duty to look out in
general for the safety of others. The distinction between
the care required in connection with the running of a rail-
way train operated on a right of way, as to which the rail-
road company enjoys the exclusive right of possession,
and the care which should be exercised in the running of
a street car operated in the public streets of a city, is
manifest. Those operating a street car under such circum-
stances are bound to do so with regard to the safety of
persons rightfully upon the public streets, for the street
car track, notwithstanding its additional use, remains a
part of the street. This distinction is well recognized by
the authorities. See *Railwag Co. v. Cooney*, 87 Md. 261 (39
Atl. Rep. 859); *Railway Co. v. Arnreich. 'Co.*, 78 Md.
589 (28 Atl. Rep. 809); *Bergman v. Railway Co.*, 88 Mo.
678; *Weitzman v. Railway Co.* (Sup.) 53 N. Y. Supp. 905;
*Kelley v. Railroad*, 20 Ky. Law, 471 (46 S. W. Rep. 688;)
2 Thompson, Negligence, sections 1476, 1477.

In view of the duty which therefore rested on the
motorman of defendant's car, in the case before us, to be
on the lookout to avoid injury to persons using the public
street, we think that in determining whether
he did see the deceased in front of his car long
enough before the fatal injury was inflicted to have

*Margin notes:*
1. STREET railway: exercise of care: contributory negligence.
2 SAME: question for jury: evidence.

avoided it by the exercise of reasonable care, which under the circumstances would be the great care and foresight which a reasonable and competent motorman should use to avoid such an injury when the danger thereof was apparent to him, the jurors might take into account what would have been necessarily apparent to the motorman in the exercise of such care.   See *McDivitt v. Railway Co.*, 99 Iowa, 141. And if, under all the circumstances, including the fact, which the evidence tends to establish, that the deceased was carried some twenty feet, while clinging to the dashboard of the car, after it came in contact with him, before he was run over, they found that the motorman did see the deceased in danger in time to have avoided the fatal injury to him, they would have been justified in returning a verdict for the plaintiff, notwithstanding the conceded negligence of the deceased in placing himself in danger.

Even in railway cases we have held that it is not necessary to show by the testimony of the employes in charge of the train that they actually saw the danger of one who was imperiled by reason of his contributory negligence, but that their knowledge of such danger could be found from circumstances indicating that they must have been aware of such danger.   *Purcell v. Railroad Co.* 117 Iowa, 667.   And in this case the finding of the jury that the motorman, who was shown to have been on the front platform of the car, from which he could easily see the surface of the street immediately in front, as he was advancing,—and the fact that it was his duty, not only under the rules of the company, which were admitted in evidence, but also under the general requirement of the exercise of care in operating the car,—did see the deceased in time to have avoided the fatal injury to him, would have had support in the evidence.

We are not to be understood as making any departure from the well-settled rule, recognized in this state and by

a majority of the authorities in other states, that contribu-
tory negligence will defeat recovery notwithstanding the
concurrent negligence of the defendant. The effect of our
holding is simply to say that, under the circumstances,
the jury could have found that the motorman had knowl-
edge of the danger of deceased, due to his contributory
negligence, in time to have avoided the fatal injury to
him. If, instead of using the means within his control to
stop the car after the danger to the deceased became ap-
parent, he negligently failed to do so, or, as indicated by
the testimony of one witness, became spellbound with
fright, and allowed the car to run on, after seeing the danger
of deceased, without shutting off the power or reversing
it, and thus an injury was inflicted which might have been
avoided, then the liability of the defendant would be
sufficiently shown. The controlling consideration for the
court, when asked to direct a verdict for the defendant,
was whether it appeared from the evidence that the mo-
torman, in the exercise of the care required under the cir-
cumstances, was not aware of the danger in time to have
avoided the fatal injury; and we are constrained to say
that it was error to hold that there was no evidence tend-
ing to show that the injury could thus have been avoided.
—REVERSED.

## SUPPLEMENTAL OPINION.

McCLAIN, J.—In a petition for rehearing counsel for
appellee call attention to the statement in the foregoing
opinion that: "If, instead of using the means within his
control to stop the car after the danger to the deceased
became apparent, he [the motorman] negligently failed to
do so, or, as indicated by the testimony of one witness,
became spellbound with fright, and allowed the car to run
on, after seeing the danger of deceased, without shutting

off the power or reversing it, and thus an injury was inflicted which might have been avoided, then the liability of the defendant would be sufficiently shown." The objection specifically is that this language indicates the view that if the motorman, after becoming aware of the danger to deceased, failed to avert such danger by reason of being spellbound with fright, the defendant would be liable regardless of whether the motorman was negligent. This is not the construction which should be put upon this language in the opinion. It is evident from the entire course of reasoning that the liability of the defendant must be predicated, under the circumstances discussed, upon the negligence of the motorman after becoming aware of the danger to deceased. If he did not avoid the injury by reason of becoming spellbound, and was, under the circumstances, not negligent in thus being spellbound, no liability of the defendant would be shown. It must, however, be a question for the jury whether the motorman was negligent in not acting by reason of this condition. This explanation we think is sufficient to show the meaning in which the language objected to is used. This is said not as indicating a conclusion different from that indicated in the opinion, but for the purpose of avoiding any misconstruction of this language in the event of a new trial.

The petition for rehearing is overruled.