# AMERICAN STORES COMPANY *v.* VIOLET A. HERMAN.

[No. 121, October Term, 1933.]

*Decided February 1st, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Walter L. Clark,* with whom were *Roszel C. Thomsen* and *Clater W. Smith* on the brief, for the appellant.

*Leonard Weinberg,* with whom were *Harry J. Green* and *Weinberg & Sweeten* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This action was instituted in the Baltimore City Court by Violet K. Herman against the American Stores Company and the United Railways and Electric Company of Baltimore, to recover compensation for injuries which she sustained as a result of a collision between a car of the railways company, on which she was a passenger, and a truck owned and operated by the American Stores Company, which occurred on June 13th, 1932, at the intersection of Madison Avenue and Presstman Street in the City of Baltimore.

The plaintiff joined issue on the defendants' general issue pleas, the case was tried before the court and a jury, and at the conclusion of the trial the jury returned a verdict against both defendants. From a judgment on that verdict, the American Stores Company appealed. There are four exceptions in the record, of which the fourth relates to the court's ruling on the prayers, and the others to its rulings on questions of evidence. These exceptions will be considered in their order.

The first exception relates to the refusal of the court to allow the following question on cross-examination of a witness for the plaintiff: "Q. Did you hear him say that your car passed the south-bound car about four or five houses north of the building line? A. Yes, sir. Q. Is that correct?"

In asking the witness to say whether the statement was correct, he was in effect asked to say whether the witness who gave it testified falsely. The question was improper because one witness cannot be asked to characterize the testimony of another (*Missouri, K. & T. R. Co. v. Lycan,*

57 Kan. 635, 47 P. 526, 528), since that is exclusively the function of the jury,

William J. Redmond, a witness for the American Stores Company, having testified that he had seen sparks flying from the rails when the street car was about "fifteen feet from the building line," at the corner of Presstman Street and Madison Avenue, was asked: "You mean fifteen feet north of the building line?" and replied: "Yes, sir; he had no passengers to take on and he didn't discharge or receive any at that corner, and I don't think that he was going to make any stop. In fact, I know he was not going to make any stops, there didn't any one get off at that corner. If he was going to make a stop at that corner he would have been running slow enough to have stopped on the corner and not down there." Counsel for the United Railways and Electric Company moved to "strike that out." The motion was granted, and that ruling is the subject of the second exception. So much of the answer as located the car was proper. The remainder was made up of argument, inference, and opinion, and upon proper motion should have been stricken out. The motion to strike involved in the exception was too general, and included good as well as bad evidence, and should have been overruled (*Jones on Evidence,* sec. 895), but we do not consider the error reversible, since the evidence was cumulative, and the question itself was too general, in that it failed to specify whether it referred to the north or the south building line.

In the cross-examination of Redmond by counsel for the United Railways and Electric Company, he was asked if he had not after the accident signed a paper stating facts at variance with those to which he had testified. He admitted signing the paper, and it was offered in evidence without objection. On redirect examination by counsel for the appellant he was shown what purported to be an unsigned transcript of a statement made by him at or about the same time, which tended in some degree to corroborate his testimony and to contradict his signed statement. He testified that the transcript correctly recorded what he had said, and

it was then offered in evidence by appellant, apparently for the purpose of rehabilitating the witness. Counsel for the United Railways and Electric Company objected, and the objection was sustained. That ruling is the subject of the third exception.

The rule supported by the great weight of authority is that, where a witness "is discredited by proof of contradictory statements at different times, it is no restoration of his credit to show that at still other times he has made statements in accordance with his testimony" (*Jones on Evidence*, 870; 40 *Cyc.* 2787), but the rule in Maryland is otherwise. In this state, from a very early period, it has been held that such evidence was admissible. *Cooke v. Curtis*, 6 H. & J. 93. But, while that case has been followed and approved in a long line of cases, reviewed by Judge Pattison, speaking for this court, in *Cross v. State*, 118 Md. 669, 86 A. 223, it was held in *Maitland v. Citizens' Nat. Bank*, 40 Md. 540, 559, that the rule recognized in this state should not be extended but applied strictly, a statement which was adopted and approved in *Lanasa v. State*, 109 Md. 620, 71 A. 1058, and in *City Pass. Ry. Co. v. Knee*, 83 Md. 77, 34 A. 252. Consistently with the principle announced in *Maitland v. Bank, supra*, it was held in *Lanasa v. State, supra*, that a corroborating statement made thirty-nine days after the act was inadmissible; in *City Pass. Ry. Co. v. Knee, supra*, where a witness had testified to the details of an accident at which he swore he was present, and was impeached by evidence tending to show that he was not present, and the plaintiff, to restore his credit, offered to prove that he had said to a third person shortly after the accident that he had been present and had seen the accident, but had given none of the details, it was held that the offer was properly refused, the court stating that: "It is difficult to perceive how a declaration like this can prove, or tend to prove, that the narrative of facts made in his sworn statement is not a fabrication, made to meet the emergencies of the case, or that his recollection has not varied"; and in *City Pass. Ry. Co. v. Cooney*, 87 Md. 261, 272, 39 A. 859, 863, the court said: "The action of the court on the offer to

prove by William Dickell what he said to people on the car about the accident, as embraced in the seventh exception, would seem to require no consideration by us, as two witnesses were afterwards permitted to state what he did say. That character of evidence, for the purpose of corroborating a witness who has been impeached, was considered in *City Pass. Ry. Co. v. Knee*, 83 Md. 77, 34 A. 252, where the authorities are reviewed; but the cases in this state do not go to the extent of holding that the impeached witness can himself testify to what he said on other occasions, in order to corroborate his testimony given at the trial."

The statement last quoted was obviously *dicta*, but is nevertheless consistent with sound reason. To permit a witness who, having sworn to one thing on the witness stand, admitted signing a statement giving a different version of the same facts, to corroborate himself by proving by his own testimony his own statements in support of it, would be a mere juggling with the truth, more likely to bring the forensic administration of justice into disrepute than to rehabilitate the witness. Apart from that consideration, the transcript, which was offered as a whole, contained matters which were not found either in the sworn testimony of the witness or his signed statement, some of which were inadmissible under any theory, and for that reason also the offer was properly refused.

Appellant also contends that it was entitled to have the statement in evidence to explain why it called the witness. But the rule invoked applies only where a party is induced to call a witness because, as a result of previous statements made by the witness to the party calling him, or to counsel for such party, inconsistent with his testimony, he was led to believe that the testimony of the witness would be different from what it proved to be. The reason for the rule is that a party should not be held to accredit a witness who, while in fact hostile, has deceitfully led the party calling him to believe that his testimony would be favorable to such party when in fact the witness knew it would be adverse. 40 *Cyc.* 2693. In such a case, the party calling the witness is permitted to

offer evidence, not to impeach him, but to show why he was called at all. *Washington, B. & A. R. R. v. Faulkner,* 137 Md. 451, 112 A. 820. That rule is not applicable here, for it does not appear that Redmond made any statement to appellant or its counsel inconsistent with his testimony.

No point was made in this court of the refusal of the appellant's demurrer prayers, and it becomes unnecessary to refer to them further than to say that a careful examination of the evidence shows no error in the rulings as to them.

The objection to the rulings in reference to the plaintiff's second and third prayers and the third and fourth prayers of the United Railways and Electric Company were not argued in this court, and they, too, will be taken as abandoned. Rule 39, sec. 4, Rules of the Court of Appeals.

But, apart from the rulings on evidence, the appeal turns upon "the granting of certain prayers offered by the plaintiff, and the refusal of one prayer offered by the defendant." Appellant's brief, p. 1. And, in stating the questions presented by the appeal, appellant refers only to the first and fourth prayers of the plaintiff and the third prayer of the defendant (appellant here). So that in dealing with the rulings on the prayers we will consider only those three specified. *Id.*

There was in the case testimony tending to prove these facts, which are material to a consideration of these prayers.

The collision occurred at the intersection of Madison Avenue, running northwest and southeast, and Presstman Street, running northeast and southwest, in Baltimore City. Presstman Street approaches the intersection from the west at an ascending grade of one per cent., and Madison Avenue approaches it from the north at a descending grade of two and one-half per cent. At that point both streets are thirty-eight feet ten inches wide from curb to curb. At the time of the accident, the street car was south-bound on Madison Avenue, and the truck was proceeding east on Presstman Street. The sidewalks on Madison Avenue are fourteen feet six inches wide, and on Presstman Street twelve feet six inches. These

facts, from their nature, are undisputed, but there are few others entitled to the same credence.

There was evidence tending to show that immediately before and at the time of the accident the street car was traveling at a "terrific" rate of speed, that it was proceeding moderately, and that it was going at the rate of eight or ten miles an hour; that the driver of the truck blew his horn as he came to the intersection; that he did not blow his horn; that the truck came to a complete stop at the intersection; that it did not come to a complete stop, but "hesitated"; that the truck stopped to let a north-bound car go by; that it did not stop to let the car go by; that, when the truck reached Madison Street, the street car was 150 feet away; that it was about "four doors" up from the building line.

There was evidence to support the theory of the United Railways and Electric Company that the truck had stopped, apparently to let the street car pass, and that, when the street car motorman, acting upon the apparent invitation to proceed, increased the speed of the street car, the truck started forward directly in front of it, and so close to it that the motorman was unable to avoid a collision. There was also evidence to support the theory of the appellant that the truck did not stop, that it had the right of way, and that when it started across the street from the curb the street car was "eight houses" away, and that the collision was caused by the excessive speed of the street car and the failure of the motorman to yield the right of way to which the truck driver was entitled. There was also evidence to support the plaintiff's theory that the collision occurred as a result of the concurring negligence of the street car motorman in driving at an excessive speed and failing to give the right of way, and of the truck driver, who drove a heavy truck directly in the path of a rapidly approaching street car.

In connection with her theory of the case, the plaintiff offered four prayers, all of which were amended and granted. No objection was made in this court to the granting of the

plaintiff's second and third prayers, and, as stated above, the objections thereto will be taken as abandoned.

By her first prayer as amended the jury were told that, if they found that at the time of the collision she was a passenger in the street car, and that she suffered the injuries mentioned in the evidence as the result of a collision between the car and the truck, and should further find that "the collision was due both to the failure of the motorman of the street car to exercise the highest degree of care and skill practicable under all of the circumstances for the safety of the plaintiff and to the failure of the chauffeur of the automobile truck of the defendant, American Stores Company, to exercise ordinary care and caution in the operation of said automobile truck, then the verdict of the jury must be for the plaintiff as against both defendants, unless the jury further find from the evidence that the plaintiff contributed to her own injuries by failure on her part to use ordinary care and prudence." Appellant's comment on that prayer is that, if the phrase "caused by" had been substituted for the words "due to" used in the prayer, it would not be open to criticism, but that the use of the words "due to" in the prayer makes it misleading. But it is not clear why that should be so. The phrase "due to," while idiomatic, is in such constant use that it is highly improbable that any one would be misled as to its meaning as used in the prayer. The word "due" as ordinarily used in prayers to qualify the word "care" means adequate, sufficient, or requisite, but the phrase "due to" means a quality or attribute ascribed to its possessor "as an effect or result to its cause, or origin; owing to, caused by, in consequence of." *Oxford Dictionary*. As used in the prayer under consideration it is equivalent to, and synonymous with, "caused by," and the apprehension that any one ordinarily familiar with common English usage would understand it in any different sense seems to lack substance. As the prayer in other respects appears to be a correct statement of the law applicable to the facts of the case, it was properly granted, for manifestly, if the plaintiff was injured as the result of the concurring negli-

gence of the two defendants in failing to exercise the degree of care which the law respectively imposed upon them, she was entitled to recover. The prayer submits in effect that proposition and nothing more.

The plaintiff's fourth prayer related to the measure of damages, and is in form similar to prayers, defining the measure of compensation in cases of permanent injury, which have been repeatedly approved by this court. The criticism of it is that the words "the injuries complained of" as used in the instruction that, if the jury should find their verdict for the plaintiff, "in estimating the damages the jury are to consider the health and condition of the plaintiff before the injuries complained of, as compared with her present condition in consequence of such injuries, and whether the same are in their nature permanent, * * *" are too broad and indefinite, and permitted a recovery for injuries complained of but not proved. It may be conceded that the phrase "complained of" does involve a certain ambiguity, unless limited by some qualifying reference, such as "complained of in the declaration," or "as described in the evidence," but it has been approved too often by this court in the identical connection in which it is used in this case to permit its propriety to be questioned now. *Thomas on Prayers,* sec. 441, notes 45 and 46; *Washington and Rockville R. Co. v. Sullivan,* 136 Md. 203, 110 A. 478. It has been adopted and standardized as a convenient and conventional formula for defining the measure of damages in cases of permanent injury, and, while it may in some respects be subject to verbal criticism, it has through long-continued use come to have a meaning so generally understood that it is highly unlikely that defendants in such cases will be injured by its use. Especially in view of the fact that they may, by appropriate prayers, so limit its application to the facts of particular cases as to completely eliminate any possibility that its use will mislead or confuse a jury or injure a defendant.

Another objection is that the prayer permitted the plain-

tiff to recover for a uterine condition which she ascribed to the accident, but which was not shown by the evidence to have been caused thereby. If that objection was well founded, it should have been presented by an instruction excluding that particular condition from the consideration of the jury as an element of damage. No such instruction was offered, and the objection comes too late when made for the first time in this court. For these reasons we find no error in the granting of that prayer.

Appellant in its third prayer asked the court to instruct the jury that, "if they shall find from the evidence that the accident complained of was the result of an unavoidable accident as between the plaintiff and the defendant American Stores Company unmixed with negligence on the part of the driver of the truck of the defendant American Stores Company, then the verdict of the jury shall be for the defendant American Stores Company. * * *" The prayer was refused, and in our opinion properly refused. First it was misleading and confusing. It left the jury to find that "the accident" complained of was the result of an "unavoidable accident," as between the plaintiff and the appellant. It is not clear what distinction is to be made between the accident complained of and some other accident which caused that accident. It may be that, by "accident complained of," the draftsman meant to refer to the injuries complained of, or to the collision, but, since that was not made clear, no error is to be attributed to the court in refusing the prayer. Nor was such a prayer applicable to the facts of the case. Varying and conflicting as they are, in no aspect can they be said to furnish any legally sufficient evidence of an unavoidable accident. Two vehicles, a street car and a truck, were approaching a common point at which they would collide unless one or the other stopped. Either could have stopped in time to avoid the collision, but neither did. One, the truck driver, apparently assumed that he had the right of way, and, either relying upon that, or oblivious of its presence, drove directly in front of the street car, which he said was approaching at a high rate of speed. The other, the motorman, knew that the truck was proceeding on a course that would carry it in

front of the street car and that unless one or the other stopped they would collide, nevertheless, he did intentionally go forward until the car collided with the truck. Those facts are wholly inconsistent with an "unavoidable" accident, but are only consistent with the theory of an accident which either the truck driver or the motorman could have avoided. The truck driver testified that he did not stop because he was "in a hurry"; the motorman testified that the car had "slowed up enough to allow for a prospective passenger or anything coming from the west-bound side"; in other words, he, too, could have stopped, but he did not, because he said he thought he "was having an understanding with the truck driver because he was standing." Other evidence in the case indicated facts even less favorable to the theory of an unavoidable accident. But the facts stated necessarily exclude the idea of unavoidableness, for, when two persons in the complete control of their respective faculties do what each intended to do, their acts are deliberate and intentional, even though the result is an accident which neither may, but each should, have anticipated. The distinction between avoidable and unavoidable in such a case is the distinction between volition, will, purpose, design, or intent on the one hand, and chance, uncontrollableness, compelling necessity, and involuntariness on the other. And, since no conclusion is possible from the evidence in the case other than that either the motorman or the truck driver could have avoided the accident by stopping the car or the truck, the accident was not unavoidable. Whether the failure of either to stop was negligently induced by the conduct of the other, or whether the collision resulted from the failure of either to exercise due care, present questions of negligence not involved in the prayer, and which are not considered.

Finding no error in the rulings submitted to this court for review, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*